Rich *vs.* Mobley.

---

ALBERT G. RICH, plaintiff in error, *vs.* PEYTON MOBLEY, defendant in error.

The presumption that the law raises in favor of a gift, when a parent allows a son-in-law to take home with him, after his marriage, and retain in his possession a negro girl, is completely overcome and destroyed in the absence of other proof, by the declarations of such son-in-law, that he held the negro as a loan, and not as a gift— that the title to the property was in his father-in-law; nor does the Statute of Limitations commence to run in such case against the title of the father-in-law until a claim of title adverse to such title is brought home to his knowledge.

Motion for new trial.   From Gordon county.   Tried before JAMES S. MILNER, presiding as Judge by consent.   At April Term, 1861.

The facts of this case are incorporated in the opinion of the Court, to which the reader is referred.

DABNEY, for plaintiff in error.

CROOK, for defendant in error.

*By the Court*—LYON, J., delivering the opinion.

This was an action by Peyton Mobley, against Albert G. Rich, for the recovery of a negro woman, named Hannah, and her three children, James, Martin and Antony. On the trial it appeared, from the evidence, that the negro woman was raised by and belonged to the plaintiff, and that in the year 1842 he let Harrison Turner, who had intermarried with his daughter, in 1841, take the girl, Hannah, home with him, (the children have been born since,) but upon what terms or conditions does not directly appear from the evidence. Turner continued in possession of the girl until the year 1852. The main question in the case is, whether that possession and use amounted to a gift. In the absence of any other proof, it would unquestionably establish title in Turner at that time, for when a parent sends home property with his child, with-out a condition or qualification, the law presumes a gift was intended, and so treats it; or if there was no other evidence but the continued possession and use for so long a time, this of itself would raise a presumption of title, and if the pos-session was adverse during the time, it would create a statu-tory bar, and amount to a paramount title. But the question in this case does not rest upon these facts alone. The plain-tiff insisted that this was not a gift, but a loan, the title and property remaining in him; that the possession was not ad-verse, but for and in subordination to him; and on these questions the evidence was, that it was the custom of the plaintiff to allow his children each to take a negro, on their marriage, under about such an arrangement as this: "Here is a negro; if its services are worth anything to you, take it along, and keep it until I call for it; it is my negro, and I must have it, but you are welcome to the services until I call for it." It appears, that in 1846, in a conversation that one of the witnesses, Treadwell, who also was a son-in-law of the

Rich *vs.* Mobley.

plaintiff, and who, at that time, had a negro from the plaintiff on the same terms as stated above, had with Turner, on the subject of the negroes so delivered to the children, and while the girl, Hannah, was in Turner's possession, both the witness and Turner expressed themselves as dissatisfied with the way in which the plaintiff let them have the negroes; that at the giving in of taxes by Turner, in 1846, when the above conversation occurred, the subject of the title to Hannah came up, and was talked about by witness, the Tax Receiver and Turner, and Turner refused to give her in as his property, saying he had no title or bill of sale to her, and would not pay taxes for her, and the plaintiff paid the taxes for her; that after this, and before Turner left Whitfield county, in 1850, Turner and the witness frequently spoke of plaintiff's refusing to give bills of sale to his children for the negroes, and they were dissatisfied with the arrangements as made by the plaintiff. The witness did not see the negro delivered to Turner in 1842, or again in 1852; but he heard Turner speak of having received her on the same terms that the other children did, (as before stated.) This testimony being positive and direct, overcomes entirely the presumptions arising from delivery and possession; and shows the title in the plaintiff up to 1852. The fact that Turner pledged the negro to Starr for money borrowed in 1850, and that he claimed title to her does not alter the question in the least, unless this was done with the knowledge and consent of the plaintiff, and this the evidence does not show. On the contrary, it appears that in 1850 or 1851, and while Starr had possession of the negro, Turner went to the house of the plaintiff to get his sister-in-law to go and stay with his wife, when the plaintiff asked him where Hannah was, and said that he had heard that he, Turner, had mortgaged or sold her? This, Turner denied, and said he had only hired her to Starr, and that she belonged to the plaintiff, and was not his property, and this he frequently acknowledged to the plaintiff before and after this time. " This negatives the consent of the plaintiff to the right of Turner to sell or dispose of her. But it is argued by counsel for defendant,

Rich *vs.* Mobley.

that this, at least, brings home to the plaintiff, a knowledge that Turner was exercising such acts of ownership as were inconsistent with his title, and sufficient to constitute a point from which the Statute of Limitations would begin to run against the title of the plaintiff. Concede that this is true, and it does not help the defendant's title; because this was in 1850, and in 1852 the plaintiff put an end to the running of the statute by resuming possession and control of the negro, and a sufficient time had not elapsed, up to that time, to create a statutory bar, and the defendant cannot tack that time on to the time that run after the second delivery, to which I shall refer directly, for the purpose of making out the time for a statutory bar; to do that, the possession must be adverse, and continuous and uninterrupted for the statutory period. Neither does it alter the question, or the rights of the parties, that the plaintiff said, before his daughter married Turner, that he " had the prettiest girls in the country, and that he always gave them a negro when they married," unless these representations had been made to Turner, and he had married on the faith of them; but this does not appear. So, then, up to 1852, the title was in the plaintiff, and his title was not affected by the delivery to Turner, or Turner's possession or acts up that time.

In 1852, the plaintiff sent his son and another to the house of Turner for the negro, who gave her up to them, and they carried and delivered her to the plaintiff, who took possession of and kept her for one or two months, holding and claiming her as his own—a thing which he, according to the evidence of his children, had always and continuously asserted. Then, about the last of May or 1st of June, 1852, Turner applied to the plaintiff to get Hannah back again; that his wife was not able to do her work. The plaintiff said he was afraid to let her go, as he might be put to trouble about her. Turner said he need not be uneasy, as his business was settled up. Both plaintiff and Turner said that the negro was the property of the plaintiff, and Turner said he never had claimed Hannah as his property. She was to remain the plaintiff's property. Plaintiff told Turner he could take the negro to

work and wait on his wife, but at any time he called for said negro, she was to be returned immediately. On these terms, and for these purposes, the negro was delivered by the plaintiff and received by Turner, and afterwards, on the 10th July, 1852, Turner sells and conveys the negro to one John A. Duckett, who sold and conveyed to W. J. Reeves, and he sold and conveyed to the defendant, Rich, against whom the plaintiff, on the 17th August, 1855, commenced this action. It is clear that Turner had no title when he sold, or right to sell, and that the purchasers under him took none, as against the plaintiff; and as the verdict was against this evidence, we think the Court below properly awarded a new trial, on the ground that the verdict was strongly and decidedly against the evidence; indeed, it was without evidence.

Let the judgment be affirmed.