MITCHELL et al. v. GUNTER et al.

No. 7220. FEBRUARY 20, 1930.

O. A. Nix and I. L. Oakes, for plaintiffs in error.
G. F. Kelley and John I. Kelley, contra.

RUSSELL, C. J. The plaintiffs in the court below filed a petition against the defendants to recover a two-thirds undivided interest in certain land, including lot 135 in the 7th land district of Gwinnett County, containing 250 acres, more or less; to have the same partitioned and sold; for injunction, etc. Later the petition

was so amended as to dismiss the action as to all land except lot 135; and the jury found a verdict for the plaintiffs as to this lot. The defendants made a motion for a new trial, which was overruled, and they excepted.

It appears from the record that W. F. Mitchell purchased lot 135 from Hope Brogdon and Joseph W. Baxter, administrators of George Brogdon, and received from them, on November 2, 1870, a deed which was recorded in the clerk's office of the superior court on November 22, 1876. W. F. Mitchell died in 1883. His wife had predeceased him, and only one of his three children, Joseph W. Mitchell, survived him. Another son, Thomas Mitchell, who died before the death of W. F. Mitchell, left as his sole heir at law Mrs. Mary F. Gunter, one of the plaintiffs. The only daughter of W. F. Mitchell, Mary M. Davis, died leaving children and representatives of children, who constituted the remaining plaintiffs in this action. The sole heirs of Joseph W. Mitchell (John T. Mitchell and his sister, Mrs. M. C. Bagwell), who are alleged to be in possession of lot 135, and Corbin and Little, are named defendants. The only connection which Corbin and Little have with the case is with reference to timber, and this is not material to the issues now presented. The defendants filed an answer, admitting certain paragraphs of the petition and denying others, but raising the following material issues: They deny that W. F. Mitchell was seized and possessed a lot of land 135, but say that this lot, at the time of the death of W. F. Mitchell in 1883, was owned by J. W. Mitchell and had been owned by him for a long number of years before the death of W. F. Mitchell, who, when he died in 1883, neither owned nor was he in possession of this lot. They allege that all the lands owned by W. F. Mitchell at the time of his death were sold by J. W. Mitchell as his administrator. After setting forth the heirs of W. F. Mitchell, the answer alleges that all of these were settled with in full by the administrator before he was dismissed in 1890. It is further alleged that John T. Mitchell and Mrs. M. C. Bagwell are the sole heirs at law of J. W. Mitchell, deceased, and that J. W. Mitchell at the time of his death in 1924 was the owner of lot 135 and died in possession of it. Defendants deny that plaintiffs have any title or interest in the lot. It is alleged that W. F. Mitchell at the time of his death did not own and did not claim to own lot 135; that for more than

twelve years before the death of W. F. Mitchell the lot in question was returned for taxes by J. W. Mitchell, and the tax-digests show that beginning with and including the year 1872 this lot 135 was returned for taxes by J. W. Mitchell and not returned by W. F. Mitchell, although the latter returned other property; that J. W. Mitchell was in possession of lot 135 from 1872 until his death in 1924, and he paid taxes on it and claimed it for more than 53 years; that practically all this lot was under fence for 30 or 40 years until recently, when the old fences were burned; that J. W. Mitchell was in actual possession, had it enclosed, and his title and ownership was never disturbed for more than 50 years; that when W. F. Mitchell died in 1883 this lot of land was not appraised as a part of his estate and was never claimed to be a part of his estate; that J. W. Mitchell wound up the estate of his father and settled in full with all the heirs prior to the year 1890, and took full and final receipts from each of them for all their interest in the estate of W. F. Mitchell, and was dismissed, and defendants say that the plaintiffs and their ancestors under whom they claim are estopped from setting up any claim to the lot; that the plaintiffs and their ancestors knew that J. W. Mitchell claimed this lot of land, and they were put on notice of this fact, and even if they had any claims or interest they would now be barred from recovery. The 34th paragraph of the answer is as follows: "Defendants further say and plead that they have a prescriptive title to said property, and that plaintiffs have no interest in the same. The defendants therefore say that the plaintiffs have no right to an injunction as prayed for in this case, and no right to have any of the deeds or papers canceled as claimed by them, and no right to recover any interest in said property."

In addition to the general grounds, the motion for a new trial was predicated upon ten additional grounds. Ground 4 asserts a new trial should be granted, because the following material evidence was withheld from the jury: J. T. Mitchell, as a witness for the defendants, was asked the following question: "Do you know who has been in possession, as far back as you can remember, of this lot No. 135?" Counsel for the plaintiffs stated to the court, "I object to that; he can tell just how he was in possession." The objection was sustained. Movants say that this ruling was erroneous, because: (a) One of the contentions of movants in the trial of the

case was that J. W. Mitchell, under whom the defendants claimed as heirs at law, had a prescriptive title to said land, and had been in possession of it for about 50 years to the time of his death, and this evidence was material and relevant to prove this contention. (b) For a witness to testify that a person is or was in possession or that he is or was not in possession is evidence of a fact, and is testifying to a fact, and as to how he was in possession is a matter for examination further or for cross-examination. (c) The ruling of the court was harmful and hurtful to the movants, and deprived them of this material evidence before the jury. Conceding that the witness should have been permitted to answer the question propounded, it does not appear that the ruling was harmful to the movants or deprived them of evidence as to the fact sought to be proved. It appears from an examination of the testimony of the witness that before he concluded his testimony he was permitted to swear not only that his father was in possession but also that his father claimed the property as his, and in the course of the trial the same testimony was admitted from other witnesses without objection.

The fifth ground alleges the following as error: While J. T. Mitchell was testifying he was asked the question whether his father claimed this property as his, to which he replied, "Yes, sir, I've heard him say lots of times that it was his." Upon plaintiffs' counsel objecting as follows: "We object to that; you can't show what a man said in his own interest," the court remarked, "You can show the character of his possession." Upon the plaintiffs' counsel then objecting to the evidence "on the ground that it would not illustrate anything in this case, even if he was in possession of the place and there was a joint tenant," the court remarked, "That is a question to be explained to the jury by the court." Thereupon the defendants' counsel repeated the question, "Now what did you say Mr. Mitchell said?," to which the witness replied, "I have heard him say lots of times that if they have got the money I have got the deeds if they want to buy it." To this counsel for the plaintiffs objected, and the court sustained the objection to the last answer, but the witness was permitted to answer the next question of defendants' counsel that his father claimed all this property, claimed it was his. Later, upon the objection that the claim was only oral, the court ruled that the

admissions are only admissible to show the character of his possession. It is contended that by this ruling the testimony as to what his father said about the property being his, and claiming it as his property, was excluded from the consideration of the jury. We can not concur in this conclusion. Properly construed, the ruling of the court went only to the effect of instructing the jury that the fact that one claimed land to be his was not proof that the land is in fact his, but that the evidence was admitted to the jury for the one purpose of showing the character of the possession, if possession is shown. In such a case as this, in which the plaintiffs pleaded and introduced evidence to show that they were cotenants with the father of the defendants, the ruling of the court was perhaps more favorable to the defendants than they were entitled, because when cotenancy is shown one of the cotenants must not only show that he thereafter claimed the interest of his cotenant, but he must show notice of his adverse claim brought home to his cotenant and prove, ouster.

The sixth ground complains that the court excluded from the consideration of the jury the question of the possession of J. W. Mitchell, and particularly that Mitchell had controlled lot 135 for more than fifty years. What occurred, as stated in this ground, is as follows: "Q. How long before, how many years before he died, did Bill Mitchell [J. W.] control this lot 135?" By the court: "Just tell what he did." This ruling of the court is undoubtedly correct, for the question as asked only called for the opinion of the witness as to who controlled the lot which was the subject of the controversy, and did not meet the requirements of the law either in proving possession or claiming title, because a man might "control" a lot and never be in possession of it nor claim to own it. The next question asked, apparently in acquiescence of the ruling of the court, was, "What did he do with reference to this lot 135 during the lifetime of his father? A. He controlled that Hutchins place; there was 360 acres of it, and I know he prosecuted Ike Doss for cutting some bees out of a tree, and that's been forty years ago I guess, and that was on this lot that he always claimed. That was on this lot 135, and I heard Bill Mitchell talking about it." It will be noticed that the answer to the first question is in the evidence without objection. When plaintiffs' counsel objected to the answer of the witness that he

"heard Bill Mitchell talking about it" (referring to the prosecution of Ike Doss), upon the ground that the evidence would be hearsay, the court, in our opinion, ruled correctly in saying, "Yes, you couldn't tell that." The next question asked was, "What you heard Bill Mitchell say about it was during the time that Bill Mitchell was in possession of it? A. Yes, sir." To this counsel for plaintiffs interposed by saying, "That's a supposition of itself." No objection based upon any ground was offered, and no ruling upon the question of possession was made by the court's remark that "Possession can be proved like any other fact." We are compelled to conclude that the rulings of the court as set forth in this ground are not erroneous for any reason stated in the exception, inasmuch as the witness was permitted to testify that "He controlled that Hutchins place; there was 360 acres in it. I know he prosecuted Ike Doss for cutting some bees out of a tree, and that's been forty years ago, I guess, and that was on this lot that he always claimed." The rulings of the court were not erroneous for any of the reasons stated in grounds (a), (b), and (c) of the sixth ground of the motion for a new trial.

It appears from an examination of the record that most of the evidence alleged, in the seventh ground, to have been illegally withheld from the jury against the demands of the movants was in fact admitted without objection. In response to the question addressed to the witness Corbin: "I will get you to state, Mr. Corbin, what declaration or statement you ever heard old man Mitchell say as to this particular property; whether it was his or Bill Mitchell's," the witness was permitted to testify, though not responsively to the question, "I couldn't say that I ever heard him say anything about this land they call the Hutchins place, but I know of my own knowledge that Bill Mitchell claimed it and looked after it when his father was living there with him." There was no objection to this question or answer. The next question asked was, "For how many years before his father died? A. I couldn't say. My father bought a hundred acres from William Mitchell's father, in about a mile and a half from him, when I was a schoolboy, and Bill Mitchell would come over there at night and talk to my father, and he always said them big woods was his." Upon objection that the conversations between Bill Mitchell and the father of the witness were hearsay, we are of the opinion that the court

properly excluded the answer to the last question; or, if it should not have been excluded, as the objection was only addressed to this portion, the admission of the substance of the same testimony, to wit, that the witness knew of his own knowledge that Bill Mitchell claimed it and looked after it, rendered harmless the exclusion of the testimony of which complaint is made.

In the eighth ground it is alleged that the court erred in charging the jury: "You are to determine whether or not in 1883 there was a prescriptive title in Joseph W. Mitchell. It takes twenty years to obtain a title by prescription, to give Joseph W. Mitchell title to the property as against W. F. Mitchell, and you must see whether or not he, Joseph W. Mitchell, had been in exclusive possession of this property up to 1883 for twenty years; if so, you would give him title, that is, in the absence of any paper title. But if he had not been in exclusive possession for twenty years as against W. F. Mitchell's estate, he would not have title, and title would be in the estate of W. F. Mitchell." Movants say that this charge was error: (a) Because it was not applicable to the facts in this case, and injected a theory that was not raised either by the pleadings or the evidence, and gave the jury an opportunity to decide the case against movant upon a theory not in the case—that the defendants should prove twenty years possession prior to the death of W. F. Mitchell in 1883, when as a matter of fact the defendants did not claim that Joseph W. Mitchell had been in possession of said property for twenty years prior to that time as against W. F. Mitchell. (b) Said charge placed upon the movants a burden not proper or legal, because it made it incumbent upon them to prove twenty years possession of said property prior to the death of W. F. Mitchell in 1883, nor did they claim such or take any such position. (c) Said charge was confusing and misleading. (d) Said charge states as a fact that the title to the property would be in the estate of W. F. Mitchell when he died in 1883, unless it was shown that Joseph W. Mitchell had been in possession for twenty years prior thereto. The isolated deed to W. F. Mitchell introduced in evidence would not be sufficient to authorize plaintiffs to recover the property. (e) Even if W. F. Mitchell was the owner of the property originally under the deed to him of November 2, 1870, the evidence shows that Joseph W. Mitchell paid taxes on the property in his own name for more than twelve years prior

to the death of W. F. Mitchell, and was in exclusive possession of the property during this time, claiming to own it and exercising control and dominion over it; that W. F. Mitchell was the father of Joseph W. Mitchell, and there was therefore a conclusive presumption of a gift under the law after seven years possession, and therefore at the death of W. F. Mitchell this conclusive presumption of a gift had ripened into a complete title; and it was error for the court to charge the jury that Joseph W. Mitchell would have to show possession for twenty years prior to the death of W. F. Mitchell.

Upon a careful consideration of the pleadings and the evidence we find no error in the instruction of which complaint is made, for any of the reasons assigned. Treating these assignments of error in reverse order, the court could not have charged upon the doctrine of seven years possession which raises a conclusive presumption of a gift. Section 4151 of the Code is not placed in the portion of the code which deals with prescription. It is not a part of the law of prescription. It is explicit in its terms, and is restricted to cases where possession for seven years raises a presumption, as between parent and child, that the title passed originally by gift. It dates back to the time of the gift. In this case the defendants claimed title by prescription, as see paragraph 34 of the answer; and the court did not express any opinion as to the evidence in his statement with reference to the deed of W. F. Mitchell, for it was an undisputed fact that on November 2, 1870, the administrators of Brogdon executed this deed to W. F. Mitchell, and this deed was recorded in 1876. Mere payment of taxes upon land is not an act which will give rise to title by prescription. If it had been pleaded by the defendants that there was a presumption of a gift from W. F. Mitchell to his own son, Joseph W. Mitchell, the charge would have been error unless the jury were also instructed that if they found that there was a gift by the father to the son and that in pursuance of the gift he entered upon the land and made valuable improvements, the jury would be authorized to find in favor of the defendants; but a charge must be adjusted to the pleadings in a case, and in the absence of any such contention on the part of the defendants it would have been error to refer to any such theory. The charge was not confusing or misleading in view of the pleadings, and it did not place an undue burden upon

the defendants, because it was not argued or insisted upon. Regardless of that, it was a high point in the answer of the defendants. If the title did not pass from W. F. Mitchell except by prescription, as pleaded by the defendants, the title at the date of his death in 1883 was perfect. Perfect prescriptive title is of two kinds: prescription arising from possession of premises for a period of seven years under color of title; or when there is only possession without any color of writing to serve as color of title, the possession of the claimant must be open, notorious, and adverse for a period of twenty years. It is insisted by the plaintiffs in error that the court erred in requiring them to show twenty years possession before the death of W. F. Mitchell, when as a matter of fact the evidence shows that W. F. Mitchell himself had only been entitled to possession for thirteen years and that the defendants had shown a possession from 1890, when their father was discharged as administrator, until his death in 1924, over thirty years. As to the first contention, it is enough to say, that, as the defendants claimed adversely to the title acquired by W. F. Mitchell under his deed, the fact that the grantee in the deed had only had his muniment of title for 13 years was of no concern to them and would not affect the running of the statute of limitations. As to the second objection, it must be borne in mind that the deed to W. F. Mitchell of date November 2, 1870, was drawn by the petitioners from the possession of the defendants in this case. During all the years it had never seen the light. With this deed in his possession, the father of the defendants applied for letters of administration and excluded this lot of land from the inventory and appraisement of his father's estate. And yet, in taking the order allowing the sale of his father's real estate, after stating and identifying a number of other lots and parts of lots of land, leave was granted that he might sell "any other land belonging to said deceased." Furthermore, there is no contradiction or explanation in the testimony of the evidence of J. R. Davis, who was with J. W. Mitchell when he died at Davis's house, that J. W. Mitchell said to him, "Pa [meaning W. F. Mitchell] wanted me to have that place, and you all to have the home place," and he said, "It's just in that shape to-day." He [J. W. Mitchell] said, "Pa aimed for me to have the Hutchins place and you all to have the home place, and I never would write the deeds." The statute which bars suits

against administrators not brought within ten years after the dismissal of the administrator has no application of this case. It is not against the administrator that this action is proceeding. This is a suit for an inherited interest in land which, as alleged in the petition, was a part of the estate of W. F. Mitchell which was never brought to sale or administered by the administrator, but which was held by him, and the same rule must be applied in this case which has been applied in cases where property belonging to an intestate, whose estate has been administered and the administrator discharged, is discovered which theretofore had not been known to belong to the deceased. It devolves nevertheless upon the heirs at law of the deceased, and it must be administered. The pleadings in this equitable petition are designed to effect the same purpose. This action is not against J. W. Mitchell as administrator of his father's estate, but against his heirs (as the action could have been brought against J. W. Mitchell if he were still in life) as cotenants in property belonging to the estate of W. F. Mitchell which has never been administered. As between these cotenants, a claim of adverse interest and ouster must be shown before they are barred. Counsel for plaintiffs in error rely upon the decision in *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294) ; but that case, not being the judgment of a full bench, is not controlling.

In view of what has just been said, it was not error for the court to charge, as complained of in the ninth ground of the motion for a new trial, "Now on the question of possession if you find that the title was in the estate of W. F. Mitchell at the time of his death, then the court charges you, as a matter of law, it descended to the heirs of W. F. Mitchell; and if this property has not been administered upon and sold, and these plaintiffs are representatives of those that were cotenants, the court charges you that one cotenant can not obtain adverse possession unless there has been an ouster or they have been put on notice that the property is the exclusive property of the other cotenant." It is complained that the court did not charge the jury what ouster meant, or what notice was necessary. We think the instruction as given was sufficiently plain in its meaning. A jury of ordinary intelligence knows what ouster means as applied to possession of land, and the words "they have been put on notice that the property is the exclusive property of the other cotenant" are not ambiguous. It is also insisted that

it was error for the judge not to charge the jury "the opposite con-
tention that there had been an ouster and notice that the property
was the exclusive property of Joseph W. Mitchell." We suppose
that by this language it is meant that the court should have
charged the law applicable to the opposite contention, etc. How-
ever that may be, we are of the opinion that the charge was free
from the objection that there was any expression of opinion on the
evidence in the excerpt to which exception is taken; and that if
further instructions than those given by the court were desired,
they should have been made the subject of a timely and appropriate
request for instructions as to these details.

In the tenth ground it is alleged that the court erred in charg-
ing the jury: ".If you should further find that Joseph W. Mitchell
knew that he had no title to the property and concealed that fact
from the other heirs, that would not defeat their right to recover
their share in the estate of W. F. Mitchell." It is assigned as
error: (a) That this charge was not applicable to the facts in
the case. (b) There was no evidence to sustain the charge that
Joseph W. Mitchell knew that he had no title to the property, but
on the contrary the evidence was overwhelming that for more than
fifty years he had been in possession of it, claiming it as his own
and exercising control, dominion, and ownership of the same. (c)
There was no evidence that Joseph W. Mitchell had concealed the
fact from the other heirs that he had no title to the property, but
on the contrary the evidence showed that for more than fifty years
he had been in possession of it, claiming it as his own, paying taxes
on it, cultivating parts of it, keeping trespassers off of it, prosecut-
ing those who did trespass on it, exercising control and dominion
over it; and this charge was not only not supported by any evi-
dence but was prejudicial, harmful, and hurtful to the defendants.
A careful review of the evidence shows that none of the assignments
of error are meritorious. There are many circumstances which
support the conclusion that J. W. Mitchell knew that he had no
title to land lot 135; and as to the allegation that there is evi-
dence that for fifty years he had been in possession of it, paying
taxes on it, cultivating parts of it, etc., there is nothing in the in-
struction of which complaint is made having any reference what-
ever to any of these matters.

It is alleged in the eleventh ground of the motion that the

court erred in charging, "that to give in and pay taxes on property is not evidence itself of title to the property, but that it is a circumstance to show possession, and you have a right to consider that in determining the extent of the possession of Joseph W. Mitchell, and not as evidence of title, but it is a circumstance you may consider in this case under that subject." The exception to this instruction is without merit. Payment of taxes is not, as contended, evidence of title and ownership.

In the twelfth ground of the motion it is alleged that the court erred in charging the jury: "In this case the only issue the court feels that you can pass upon is whether or not, under the rules stated and all the facts and circumstances in the case, whether or not title was in the estate of W. F. Mitchell on the date of his death, or whether or not it was in Joseph W. Mitchell in 1883." The assignments of error relied upon are: (a) that the charge excluded from the consideration of the jury the defendants' contention in their plea and the evidence introduced in support thereof that Joseph W. Mitchell had, at the time of his death in 1924, a complete prescriptive title to said property. (b) The court had, in a previous part of the charge, in effect instructed the jury that there was no prescriptive title in Joseph W. Mitchell at the time of the death of his father, because W. F. Mitchell had only acquired a deed to the property in 1870, thirteen years prior to his death; and to tell the jury that the only question was whether or not title to the property was in the estate of W. F. Mitchell at the time of his death or in Joseph W. Mitchell was virtually to direct a verdict for the plaintiffs. (c) It excluded from the consideration of the jury the defense of estoppel set forth by the defendants in paragraphs 29, 30, 31, 32, 33, and 34 of their plea. (d) It excluded from the consideration of the jury the contention of the defendants that they could consider the long years of possession on the part of Joseph W. Mitchell, his giving in and paying the taxes on the property for a period of more than fifty years, his acts of exclusive ownership of said property, and all of the other facts and circumstances in the case on the question of ouster, should they find that the property was originally that of W. F. Mitchell and in fact that Joseph W. Mitchell was a cotenant at the beginning. It was proper for the jury to consider all this evidence on the question of ouster, if they found that Joseph W. Mitchell was a cotenant with the

ancestors of the plaintiff after the death of his father in 1883. (e) This charge, taken in connection with the charge excepted to in ground 8 and in connection with the entire charge, directed a verdict for the plaintiffs.

The assignments of error upon this charge are controlled, adversely to the contentions of the plaintiffs in error, by the rulings hereinbefore announced in the preceding divisions of this opinion.

The thirteenth ground for a new trial is: "Because the court in his charge to the jury did not present a material and substantial contention of movants in the trial of the case, to wit: their contention that the plaintiffs were estopped to claim said property sued for, and that if Joseph W. Mitchell, under whom the defendants claimed, was in fact a cotenant with the plaintiffs and those under whom they claimed, they had been ousted, and that defendants had a full and complete prescriptive title to said property. In paragraphs 30, 31, 32, 33, and 34 movants had set up in their plea of file in said case, and supported the same by proofs as shown by the record in said case, that W. F. Mitchell, under whom the plaintiffs claimed, at the time of his death did not own and did not claim lot 135, the property in controversy, but that the same was owned by Joseph W. Mitchell." Then follows a long recital of all the facts which the movants contend they had proved, without any reference to the record, concluding with the statement that even if the plaintiffs "had any claim or interest in said property with him [Joseph W. Mitchell] that they would now be barred from recovering the same after their transactions and dealings with him and after this long number of years and after his death." It is alleged that the failure of the court to charge the jury on these contentions was erroneous, because: (a) It eliminated a material and substantial defense supported by proof, that of estoppel, ouster, and prescriptive title. (b) It is the duty of the court to present to the jury, without request, each and every material and substantial contention of a party to a case. (c) Without instructing the jury as above stated, the jury could not consider the same, and movants lost the benefits of same. (d) The court erred in not presenting the same to the jury, because it was a material and substantial contention on the part of the movants on the trial of the case.

In so far as the matters adverted to in this ground of the motion can be understood, the questions which the movants sought to have

presented in the charge of the court were substantially covered in the charge of the court as delivered, and most of them have been ruled by what has been said in the adjudication of the case.

The evidence authorized the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*