31186. CULBREATH *v.* PATTON.

668

DECIDED APRIL 3, 1946.

*Pierce Brothers,* for plaintiff in error.    *W. D. Lanier,* contra.

SUTTON, P. J.    Etta Roundfield Patton filed a trover suit against Marguerite Culbreath in the municipal court of Augusta, on September 20, 1945. The petition alleged in substance that the defendant was in possession of a certain piano of the value of $100, to which the plaintiff had title, and that a demand for the piano had been made on the defendant and refused. The defendant answered, denying substantially the allegations of the petition, and alleging that the piano was her property and not the property of the plaintiff.

On the trial, the plaintiff testified: that she had been living in New York for the past 22 years; that the piano sued for had been given to her when she was 13 years of age, and that she was now 35 years old; that she had never made any effort to obtain possession of the piano, although she knew that her brother James had been in possession of it from about 1928 until his death in 1943, and that the defendant, who is her brother's widow, had been in possession of it since his death; and that she did not know why she had not taken steps to claim the piano, except that she had had no reason to do so.

Rachel Culbreath, the mother of the plaintiff, testified that the piano was given to the plaintiff when the plaintiff was 13 years old; that the plaintiff left the piano with her when the plaintiff went to New York about 22 years ago; that she let her son James,

who was the brother of the plaintiff and the husband of the defendant, use the piano, but never gave it to him because it was not hers to give, as it was the plaintiff's; that she gave her son household goods when he married the defendant in 1928, and that they lived with her until 1935 when they moved; that they did not take the piano with them, but she sent it to her son about a week after he moved; that she never asked for the piano until she had a sale for it in August, 1945, when, at the request of the plaintiff, she asked the defendant for it for the plaintiff, and the defendant refused to give it up.

The defendant testified that she married James D. Culbreath in 1928, and they lived with his mother until 1935, when they moved into a home of their own; that about a week after they moved, the piano was brought to their home and remained in their possession until her husband's death; that all she knew about the piano was what her husband told her; that her husband had exclusive possession of the piano, claiming it as his own property; that he paid taxes on it along with his other personal property during the years 1928 to 1943, when he died; that there had been no administration on his estate and she was his sole heir at law; that she remained in possession of the piano from the death of her husband to the present time, claiming it as her property; that when her husband died, she asked his mother if there was anything of James' in the house that she wanted, and his mother said that all she wanted was a bicycle which she had given him; that she asked the same question of the plaintiff, and the plaintiff said that all she wanted was her brother's Catholic Bible and rosary, which she gave to the plaintiff; that no claim had been made for the piano until the institution of the present suit; that the plaintiff's reason for making a demand for the piano was because she wanted to sell it; that the piano had been in the possession of her husband from 1928 until his death in 1943, and had remained in her possession since then.

Cornelia Martin, the mother of the defendant, testified: that she knew that the piano had been in the possession of James D. Culbreath from the date of his marriage in 1928 until his death in 1943, and had remained in the defendant's possession since his death; and that she took the Bible and rosary to the plaintiff, who thanked her for them and said that was all she wanted.

C. M. Ridley testified that, about five years before the trial (January 3, 1946), the defendant's husband told him that the piano belonged to his sister, and that was all that he knew about it.

Walter S. Harris testified that he knew the piano had been given to the plaintiff when she was 13 years old, and that he knew nothing more about it.

The trial judge found in favor of the plaintiff, and, the plaintiff having elected to take the property, ordered that it be delivered to her, and that the costs be taxed against the defendant. The exception here is to that judgment.

■ ·The plaintiff in error (defendant in the court below) contends that the evidence demanded a finding in her favor, because (1) title to the piano had ripened by prescription in her husband prior to his death, and had passed to her as his sole heir at law; and (2) because there was no evidence of a legal demand for the property by the plaintiff prior to the filing of the action.

In order for the possession of a chattel to ripen into a prescriptive title, under the Code, § 85-1706, which provides in part, "Adverse possession of personal property for four years shall give a title by prescription," the possession must be adverse to the true owner. If the husband of the defendant entered into permissive possession of the piano, acknowledging that title thereto was in the plaintiff, before he could convert such permissive possession into an adverse possession, he would have to show knowledge on the part of the plaintiff that he claimed the property as his own before the statute would commence to run in his favor. It was held in *Weathers* v. *Barksdale,* 30 *Ga.* 888: "If W. receives negroes of B. as a loan, and he subsequently sets up title to the property, the statute does not begin to run in his favor until the fact of his adverse claim is made known to B." There was uncontradicted testimony in this case that the plaintiff owned the piano at the time she went to New York, and that her mother allowed the deceased husband of the defendant to use the piano, but did not give it to him because it was not hers to give; that when the defendant and her husband moved out of his mother's home, they left the piano, and it was sent to him several days later by his mother. The fact that the piano was in the possession of the deceased husband of the plaintiff for many years, and that this possession continued until his death, would not, standing

alone, raise a legal presumption that he claimed the property as his own; for there was uncontroverted evidence that, some two years prior to his death in 1943, he stated that he did not own the piano but that it was the property of the plaintiff. "The presumption that the law raises in favor of a gift, when a parent allows a son-in-law to take home with him, after his marriage, and retain in his possession a negro girl, is completely overcome and destroyed, in the absence of other proof, by the declarations of such son-in-law that he held the negro as a loan, and not as a gift —that the title to the property was in his father-in-law; nor does the statute of limitations commence to run in such case against the title of the father-in-law until a claim of title adverse to such title is brought home to his knowledge." *Rich* v. *Mobley, 33 Ga.* 85. The mere fact that the plaintiff in this case allowed the piano to remain in the possession of the defendant and her husband for more than 22 years before demanding possession of it would not bar the plaintiff from recovering the property, where the possession of the defendant and her husband had not been such as would vest a good title to the piano in them by prescription. In this connection, see *Rawson* v. *Tift,* 53 *Ga. App.* 248 (185 S. E. 397), where this court held that a petition of a temporary administrator to recover certain personal property of his intestate, which had been held by the defendant and his predecessors in possession for more than 44 years as the property of the estate, was not subject to demurrer on the ground that the petition showed on its face that the defendant had acquired a good title by prescription. In *Whitworth* v. *Oliver,* 45 *Ga. App.* 671 (165 S. E. 767), this court held that, notwithstanding more than thirty years had elapsed since the person holding the money sued for acquired possession of it and undertook to hold it for the owner's benefit until the owner needed it in his old age, and where the money was continuously held under those conditions, the owner's claim was not a stale demand. And in *Blount* v. *Beall,* 95 *Ga.* 182, 191 (22 S. E. 52), where the evidence showed possession in the defendant for more than 12 years, the Supreme Court said, "It has been adjudged by respectable authority that the statute of limitations does not run in favor of a bailee until he sets up an adverse claim in respect of the bailment." While the defendant testified that her deceased husband had "exclusive

possession of the piano, claiming it as his property; that he had paid taxes on it along with his other personal property during the years from 1928 until 1943, when he died," there was no evidence that the plaintiff had knowledge of any adverse claim to the property while it was in her brother's possession. Moreover, the testimony of C. M. Ridley, that the defendant's deceased husband told him about five years prior to the trial that the piano belonged to the plaintiff, was not controverted. "In a suit in trover an extrajudicial statement made by the plaintiff, derogatory of his own title to the property sued for, to wit, that prior to the suit he stated to the defendant that the property sued for belonged to a person other than himself, is evidence against him by way of admission, and its probative value is for the jury." *Fletcher* v. *Gordon,* 36 *Ga. App.* 228 (136 S. E. 108). And the fact that the deceased husband of the defendant paid taxes on the piano along with his other property for several years was not evidence in itself of an adverse claim by him of title to the property, but was a circumstance to be considered along with the other evidence in the case. *Mitchell* v. *Gunter,* 170 *Ga.* 135, 146 (152 S. E. 466). Since the action was instituted within four years after the death of the defendant's husband, her possession, even if adverse to the plaintiff, had not continued for a sufficient period of time to ripen into a prescriptive title to the property in her. Under the facts of this case, the judge, trying the case without the intervention of a jury, was authorized to find that neither the defendant nor her deceased husband had acquired a good prescriptive title to the property; and the contention of the defendant, that a judgment in her favor was demanded as a matter of law because there was no evidence of a demand by the plaintiff for the piano prior to the filing of the petition, is without merit.

■ The defendant did not deny in her evidence that she was in possession of the piano at the time the suit was filed and at the time of the trial. "Where the defendant is in possession at the time suit is entered, proof of demand and refusal is necessary only to save the plaintiff the costs of court in case the defendant should disclaim title to the property." *Pearson* v. *Jones,* 18 *Ga. App.* 448 (4a) (89 S. E. 536); *C. I. T. Corp.* v. *Smith,* 56 *Ga. App.* 544 (193 S. E. 261). Moreover, Rachel Culbreath, the mother of the plaintiff, testified with respect to a demand for the property,

"That she never asked for the piano either before or after the death of James, until she had a sale for it in August, 1945, and she then asked the defendant for it for her daughter and at her request, and she refused to give it up." The suit was filed on September 20, 1945, and the evidence was sufficient to show a demand for the property during the month of August preceding the filing of the action, and a refusal by the defendant to surrender the property.

The cases of *Baskin* v. *Vernon,* 74 *Ga.* 370, *Adams* v. *Morris,* 40 *Ga. App.* 598 (151 S. E. 59), *Wilkerson* v. *Edmondson,* 49 *Ga. App.* 757 (176 S. E. 647), and *Ulmer* v. *Ulmer,* 53 *Ga. App.* 417 (186 S. E. 433), cited and relied on by the plaintiff in error, do not authorize or require a ruling in the present case different from the one herein made. The judgment of the trial court is amply supported by the evidence, and will not be disturbed by this court.

*Judgment affirmed. Felton and Parker, JJ., concur.*