### 46679. SIMS et al. v. HOLTZCLAW et al.
(384 SE2d 656)

HUNT, Justice.

The trial court granted judgment on the pleadings to the mother, Trentha Joyce Holtzclaw, and against her 6 children, who sought a declaration of title to a house in Forsyth County. The children alleged that when their parents were divorced in 1971, the house was deeded to the mother, subject to an estate for years in the children until the youngest reached majority.[1] The mother left the children at Christmas 1971, and between 1971 and 1979, visited the house from time to time. She left for good in 1979, taking her furniture and telling the children, according to their pleadings, to keep the house and to raise themselves. When the children brought this complaint against her in Fannin County, she attempted to sell the house to the Wetheringtons, intervenors in this action.

The trial court held that the children could not rely on OCGA § 44-5-85, providing a conclusive presumption of gift where the children have exclusive possession of land titled in a parent for 7 years, that the children could not adversely possess the property against their mother while they were holding the property under an estate for years,[2] and that their claims for implied trust and constructive fraud could not be entertained in Fannin County because these claims depend on an attack of the parents' divorce decree entered in Forsyth County. The children appeal; we reverse in part and affirm in part.

1. (a) The first of the children's three theories of recovery was brought under OCGA § 44-5-85, which now provides:

> exclusive possession by a child of land which originally belonged to the *parent or parents*, without payment of rent, for the space of seven years, creates a conclusive presumption of gift and conveys title to the child. . . .[3] [Emphasis

---

[1] The estate for years hereby granted to the above named, children of Maston Holtzclaw, shall terminate as to the interest of each child as above set forth, and on said last mentioned date of April 14, 1988 [when youngest turned 21], the absolute remainder-over fee simple title shall then immediately vest in Trentha Joyce Holtzclaw.

[2] Alternatively the trial court granted the mother's motion in limine to exclude evidence of the children's possession prior to 1982.

[3] The remainder of the statute sets out defenses to the conclusive presumption: "unless

supplied.]

Because the emphasized words, "parent or parents," did not replace the word "father" in the statute until the Official Code of Georgia was adopted in 1982, the trial court reasoned that seven years had not yet run against the mother's interest in the property in order to invoke the statute, and dismissed this claim of the children on the pleadings. See *Owens v. White*, 218 Ga. 1, 3 (126 SE2d 425) (1962), where this court held that the statute was effective only against fathers.

After *Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979), the Georgia General Assembly undertook to eliminate gender bias from our statutes. In passing 1979 Ga. Laws, 466 at 468, the legislature stated:

> It is the intent of this Act to revise and modernize certain laws of the State which relate to intrafamilial duties, rights, and obligations, including laws relating to divorce, alimony, support of minors, husband and wife, *parent and child*, enforcement of support, and related matters, so as to comply with those standards of equal protection under the law announced in the United States Supreme Court decision in the case of *Orr v. Orr*, decided March 5, 1979. This Act and the provisions hereof shall be liberally construed to effectuate the purposes of this Act. [Emphasis supplied.]

Thereafter, specific changes were set out, which became effective April 4, 1979. See also 1979 Ga. Laws, p. 1325, amending year's support provisions to include widowers, *Adams v. Adams*, 249 Ga. 477 (291 SE2d 518) (1982). Other statutes, including OCGA § 44-5-85, were overlooked in the closing days of the 1979 session. We have uniformly held these statutes unconstitutional and have allowed suits to proceed by the discriminated class under the otherwise valid statutes.[4]

In 1981, the Code Revision Committee, recognized the unconstitutionality of OCGA § 45-5-85 because of *Orr*, and, realizing the legislature intended to change it in 1979, revised the statute to reflect cur-

---

there is evidence of a loan, of a claim of dominion by the parent or parents acknowledged by the child, or of a disclaimer of title by the child."

[4] E.g., *Stepperson v. Long*, 256 Ga. 838 (353 SE2d 461) (1987) (mother for minor given alcohol); *Tolbert v. Murrell*, 253 Ga. 566 (322 SE2d 487) (1984) (survivors treated same for death of father or mother); *Bell v. Sigal*, 254 Ga. 78 (326 SE2d 730) (1985) (father for wrongful death of child); *Edenfield v. Jackson*, 251 Ga. 491 (306 SE2d 911) (1983) (illegitimate children for wrongful death of father); *Insurance Co. of North America v. Russell*, 246 Ga. 269 (271 SE2d 178) (1980) (conclusive presumption of dependency eliminated for widows under workers' compensation).

rent law by eliminating gender bias.[5] In *Stepperson v. Long*, supra at p. 844, we said:

> [T]he enactment of the Code of 1981 was to "revise and modernize and to repeal those laws which are obsolete as a result of the passage of time or other causes. . . ." Prior to the Code of 1981 OCGA § 51-1-18 (b) was obsolete both because of the passage of time and the constitutional principles announced in *Orr v. Orr*, supra.

This same reasoning dictates that OCGA § 44-5-85 was amended *sub silentio* in 1979 after *Orr* when the legislature passed 1979 Ga. L., p. 466, and *not* in 1982 when the amendment was officially codified in the new code.[6]

Thus, as in *Stepperson*, the omission of a presumptive right against the mother is not fatal to the children's cause of action. As we explained in *Insurance Co. of North America v. Russell*, 246 Ga. 269, 272 (271 SE2d 178) (1980):

> The reason a choice is available is that Code [section] is not, per se, unconstitutional. It is the different treatment accorded [children of fathers] and [children of mothers] . . . which is unconstitutional under the equal protection clause. This difference in treatment can be remedied by giving [children of mothers] the rights available . . . [to children of fathers] or by restricting [children of fathers] to the rights available . . . [to children of mothers], or by a combination thereof resulting in elimination of the disparity. . . .
>
> The question is how best to facilitate legislative intent where the expressed intent to differentiate between [children of fathers] and [children of mothers] cannot be carried out. . . .
>
> From our reading of [the] Code [section], the legislative

---

[5] OCGA § 1-1-2 provides that
[t]he enactment of this Code is intended as a modification, revision, modernization and reenactment of the general laws of the State of Georgia which are currently of force and is intended, where possible, to resolve conflicts which exist in the law and to repeal those laws which are obsolete as a result of the passage of time or other causes, which have been declared unconstitutional or invalid, or which have been superceded by the enactment of later laws. Except as otherwise provided by particular provisions of this Code, the enactment of this Code by the General Assembly is not intended to alter the substantive law in existence on the effective date of this Code.

[6] This eliminates any issue of retroactive application of the statute.

intent can best be accomplished by [extending] the conclusive presumption . . . [to children of mothers]. . . .

(b) The trial court further concluded that since the children were vested with an estate for years as a result of the divorce decree, and were therefore legally entitled to possession until the youngest of the children reached 21, they could not rely upon such possession to defeat the mother's title. This position misses the mark, however, because the children are not seeking title by adverse possession but by gift. *Mitchell v. Gunter*, 170 Ga. 135, 142 (152 SE 466) (1929). The possession of the house by the children need not necessarily be adverse to the right of the mother to the house, except insofar as their possession reflects her intention to give them title to the house. The allegations of the complaint demonstrating that the children desire to take advantage of the presumption afforded by the statute, are reasonably clear and sufficient.

Consequently, the children's claim, based on OCGA § 45-5-85, stated a claim against the mother and judgment on the pleadings should not have been granted. See OCGA § 9-11-8 (a) (2) (A); *Murphy v. A.C.L.U. of Ga.*, 258 Ga. 637, 638 (3) (373 SE2d 364) (1988). Likewise, it was inappropriate to grant her motion in limine to exclude evidence of the children's possession before 1982.[7]

2. The trial court properly dismissed count two (implied trust) and three (equitable trust due to fraud) of the complaint as the facts alleged do not state a claim for those causes of action.

*Judgment reversed in part and affirmed in part. All the Justices concur, except Smith, J., not participating.*

DECIDED OCTOBER 25, 1989 —
RECONSIDERATION DENIED NOVEMBER 9, 1989.

*Stokes & Dean, Fred J. Stokes,* for appellants.
*Frank W. Armstrong, J. Carey Hill, Hugh W. Stone,* for appellees.

---

[7] Under their complaint, the children may be able to prove a gift from the mother on grounds other than OCGA § 45-5-85. See for example OCGA § 23-2-130; *Milton v. Milton,* 192 Ga. 778 (16 SE2d 573) (1941); OCGA § 44-5-80. *Ryder v. Schreeder,* 224 Ga. 382, 385 (162 SE2d 375) (1968); *Pealock v. Pealock,* 227 Ga. 795, 796 (183 SE2d 397) (1971). See generally *Dillingham v. Doctors Clinic,* 236 Ga. 302 (223 SE2d 625) (1976).