49838, 49839. POTTS v. SEIFERT et al. (two cases).
49840. PUTNAM et al. v. SEIFERT et al.

PANNELL, Presiding Judge.
J. R. Potts and Mrs. J. R. Potts brought separate actions in tort against Steven B. Seifert, the son, and

Robert Seifert, the father, and Steve M. Putnam, the son and Duane C. Putnam, the father and Patricia Putnam, the mother, seeking to recover damages for injuries received in an automobile collision which involved cars driven by J. R. Potts, Steve M. Putnam and Steven B. Seifert. The Putnam mother and father, cross claimed against the two Seiferts, seeking recovery for damages to their automobile. The automobiles driven by Steve M. Putnam and Steven B. Seifert were alleged to be family purpose automobiles furnished by Duane C. Putnam and Patricia Putnam, father and mother as to the one; and furnished by Robert Seifert, the father, as to the other. Robert Seifert made motions for summary judgment based upon the contention that the automobile driven by his son was not a family purpose automobile.

The evidence in support of the motion for summary judgment shows without dispute that title to the automobile driven by Steven B. Seifert was in the father and was insured under the father's family combination automobile policy. The father's explanation of this state of affairs in answer to interrogatories was that he took title in his name "as a matter of convenience" and at a later time by deposition, that he took title in his name so as to insure the automobile in question under his policy to get a cheaper rate. The evidence, by testimony of the father and the son disclosed that the son was allowed to work on a distributive education program while in high school and that he deposited the proceeds of this work in a bank in his own name over a period of several years, and that this was the money he used to pay for the automobile in question; that the father, although he attended the purchase of the automobile, did not remember whether the purchase price was paid by check or cash, nor from whom the car was purchased, although prior thereto in answer to interrogatories, had given the name and address of the purchaser. The son testified to substantially the same facts as the father regarding the purchase of the automobile. The evidence further showed that the son was allowed to keep all of his earnings and that while he was off at school, after the occasion under investigation, the family paid his tuition and board and other funds as were recommended by the school and no more; but did pay for

his clothes and food, and at the time of the occasion under investigation he was living with his parents in their home and had done so up to that time. The occasion under investigation occurred during the summer before he went off to school; that with an exception or two, the son was the only person that used the automobile and no other person, including members of the family, could use it without his consent; that the son had the exclusive possession and control of the automobile and paid all expenses of maintenance and operation, etc. The following are questions asked and the answers given by the father regarding the certificate of title to the automobile: "Q. Did you apply for a title with the State of Georgia on that automobile? A. Yes, sir. Q. Did you receive a title on that automobile from the State of Georgia? A. Yes, sir. Q. Did you sign that title application that was submitted for that title? A. Yes, sir. Q. Did you sign it in the presence of a notary public? A. I don't know. Q. All right. Did you state that that car was your automobile at the time you applied for the title? A. (Nodded negatively). Mr. McLendon: Well, I — A. (Continuing) No, sir. Q. You did not state that? A. I did not state that. Q. Not on the application? A. I don't know. I did not state that." The father testified that when the automobile was sold, to a person whose name he did not recall, that the son received the proceeds of the sale, but he also testified that the check was made payable to him. No documentary evidence was offered in proof of the son's earnings or in proof of his bank account, nor was any evidence offered as to the contents of the father's insurance policy. There was no bill of sale on the purchase of the automobile. The title certificate was lost, or its whereabouts unknown.

The trial judge granted the motions and the appeals to this court followed. *Held:*

Prior to the Evidence Act of December 15, 1866 (Ga. L. 1866, p. 138) parties to a case and persons interested financially in the outcome were incompetent as witnesses. *Graves v. Harris,* 117 Ga. 817, 818 (45 SE 239). The preamble to that Act reads: "Whereas, the inquiry after truth in courts of justice is often obstructed by incapacities created by the present law, and it is desirable that full information as to the facts in issue, both in civil and

criminal cases, should be laid before the persons who are to decide upon them, and that such persons should exercise their judgment on the *credit* of the witnesses adduced for the truth of testimony." The emphasis on the word "credit" is contained in the Act itself. Now, all such parties as enumerated in the Act are competent witnesses and compellable to testify with certain exceptions. It was said in *Laramore v. Minish,* 43 Ga. 282, 287, after quoting the preamble above set forth, "We think under a proper construction of this law that witnesses introduced under its provisions are lifted out of the general rule, and that the jury may exercise their judgment on the credit of such witnesses from the fact of their interest, *irrespective of other impeachment or attack.*" (Emphasis supplied.)

In *Gabbett v. Sparks,* 60 Ga. 582, 585, it was said: "Ordinarily, either party, when sworn, goes to the jury not as pure as a disinterested witness; but the credibility of such party-witness is a question for the jury." In *Detwiler v. Cox,* 120 Ga. 638 (1) (48 SE 142), it was held that "The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, *even though he is not contradicted by any other witness.*" (Emphasis supplied.)

In *Armstrong v. Ballew,* 118 Ga. 168, 170 (44 SE 996) the Supreme Court, after quoting with approval the above statement from *Laramore v. Minish,* 43 Ga. 282, supra, said: "Only two judges presided in that case, but in *Penny v. Vincent,* 49 Ga. 473, which was decided by a full bench, what was said by Chief Justice Lochrane in *Laramore v. Minish* was approvingly quoted, and it was held that under the Act of 1866 juries have a larger discretion as to the credit which they will give parties testifying than in the case of witnesses testifying who are not parties. Trippe, J., delivering the opinion, said: 'With all this power, a jury should not capriciously discredit a witness or reject his testimony; but if there be in evidence any circumstances or facts in conflict with the testimony of a party to the suit, . . . and the point be directly made to the jury as to what credit shall be given to his testimony, and they deliberately decided to reject it, and the judge trying

the case, who, with the jury, both see and hear the party testify, refuses to interfere, we do not think a case is made to demand our intervention.' 'Where witnesses are parties to the suit, whatever may be their numbers, their opportunities, or means of information, the jury are to judge of the degree in which their interest affects their credibility.' *Amis v. Cameron,* 55 Ga. 449 (3). If we take it for granted that a jury can not discredit the testimony of a party at interest in a case, when there are no facts or circumstances before them which conflict with it, still we think the jury in the present case were authorized to find against the testimony of the claimant. Although, according to her evidence, she had owned the mule four or five years, and the oxen for two years, she testified that she had never returned the property for taxation, and, in explanation of her failure to do so, said she had left that to her husband and supposed he had done so. Her husband was present in court and assisted her counsel in striking the jury, but he was not introduced as a witness to show that he had returned the property for her, nor for the purpose of corroborating her testimony as to her ownership of the property. When the sheriff went to her home to levy on the property and told her his business there, she said she knew nothing about it, referred him to her husband, and made no assertion of ownership of the property. When the sheriff, after levying upon the property and leaving it at the residence of the defendant and claimant, went back there to get it, it could not be found, and he failed to ascertain what had become of it. These were circumstances which the jury might consider as conflicting with the testimony of the claimant, and, under the decisions of this court above referred to, we can not say that they were too slight to authorize the jury to discredit such testimony." See also in this connection: *Hudson v. Best,* 104 Ga. 131, 133 (30 SE 688); *Bell v. Proctor,* 212 Ga. 325, 327 (92 SE2d 514); *McRae v. Wilby,* 59 Ga. App. 401 (1 SE 77); *Fincher v. Harlow,* 56 Ga. App. 578, 580 (193 SE 452); *Hinchcliffe v. Pinson,* 87 Ga. App. 526, 530 (74 SE2d 497); *Young v. Reese,* 119 Ga. App 179, 180 (166 SE2d 420).

The testimony of the father and the son in the present case that title to the automobile was in the father, which

was undisputed, is contradictory to their further testimony that the automobile belonged to the son and was paid for by him. Under these circumstances and the lack of documentary evidence apparently available and not produced, and upon application of the above and foregoing rules of law relating thereto, the credibility of both the father and the son was a matter in question and under these circumstances, a summary judgment can not be granted based upon such testimony. *Raven v. Dodd's Auto Sales & Service,* 117 Ga. App. 416, 421 (3) (160 SE2d 633); *Columbia Drug Co. v. Cook,* 127 Ga. App. 490, 492 (194 SE2d 286). The acceptance of the explanation offered for placing the title of the automobile in the father, that is, so that he could get cheaper insurance by placing the automobile under his policy, is itself a matter for jury consideration, not the court. We think it fair to assume, from their explanation, that the cheaper insurance under the father's policy could not be had unless the title was in the father. If the father and son placed the title in the father for that purpose, in order to mislead the insurer into insuring the automobile owned by the son at a cheaper rate, then that itself would be enough to permit a jury to discredit the testimony of both witnesses.

The appellee relies upon the case of *Calhoun v. Eaves,* 114 Ga. App. 756 (152 SE2d 805). In that case it appeared the title to the automobile was not in the father, but only that the automobile was insured under the father's family automobile policy and the opinion in that case discloses: "Defendant did not request this coverage and who did is unknown. A representative of the automobile agency where the vehicle was purchased testified that it was customary to give the insurance firm the motor and serial number of a newly purchased vehicle, and that he possibly did so in this case." So far as appears in that case, the policy covered the son's automobile *as the son's automobile* rather than as one belonging to the father. In the present case, the title was in the father, and it may be inferred, had to so be in order to be insured under the father's family policy here. This, in our opinion, is sufficient to prevent the *Calhoun* case from controlling in the present case where the credibility of the testimony of the father and son was obviously a matter to be determined by a jury.

We, accordingly, hold that the trial court erred in granting summary judgment in the three cases based on the testimony of the father and son which was all that was offered on the question by movant on whom lay the burden of disproving this element of the plaintiff's case by evidence demanding a finding. *Ray v. Webster,* 128 Ga. App. 217 (196 SE2d 175).

*Judgments reversed. Evans and Webb, JJ., concur.*

Argued November 5, 1974 — Decided January 7, 1975.

*Wm. Lewis Spearman, David U. Crosby,* for Potts.

*Greer, Pollock & Klosik, Richard G. Greer, Kenneth C. Pollock, Frank Klosik,* for Putnam.

*Carter, Ansley, Smith & McLendon, M. D. McLendon,* for appellees.