## 39943. EDENFIELD v. JACKSON.

HILL, Chief Justice.

Plaintiff, the illegitimate daughter of Willie L. Jackson, was acknowledged at birth by her father in writing and, at his request, his name appears on her Florida birth certificate.[1] On January 12, 1980, plaintiff's father was killed in an automobile accident on Interstate 95 in Savannah. At the time of her father's death, plaintiff was nineteen months old. Plaintiff, through her mother as next friend, sued David Edenfield, the driver of the other car involved in the accident, for the wrongful death of her father. The defendant sought summary judgment arguing that as an illegitimate, the plaintiff had no cause of action under Georgia law for the wrongful death of her father. The trial court held that OCGA § 51-4-2 (Code Ann. § 105-1302) as interpreted by this court in *Brinkley v. Dixie Constr. Co.,* 205 Ga. 415 (54 SE2d 267) (1949), excludes illegitimate children from maintaining causes of action for the wrongful deaths of their fathers, and is therefore unconstitutional under decisions of the

---

[1] Both father and daughter were residents of Florida, and upon her father's death plaintiff was declared an heir of Willie L. Jackson under Fla. Sta. § 732.108 (2) (c) by a Florida Circuit Court.

United States Supreme Court. The defendant's motion for summary judgment was accordingly denied. We granted his application for interlocutory review.

1. Creation of a cause of action for wrongful death depends upon our statutes, for no such right existed at common law. E.g., *Burns v. Brickle,* 106 Ga. App. 150, 151 (126 SE2d 633) (1962). The particular Code section upon which the plaintiff here relies is OCGA § 51-4-2 (a) (Code Ann. § 105-1302), enumerating those persons entitled to bring a wrongful death action for the loss of a husband or father. It provides: "The widow or, if there is no widow, *a child or children, either minor or sui juris,* may recover for the homicide of the husband or father the full value of the life of the decedent, as shown by the evidence." (Emphasis supplied.) Thus, on its face the statute does not discriminate against illegitimate children.

In *Brinkley v. Dixie Constr. Co.,* supra, 205 Ga. 415, however, this court reaffirmed prior cases stating that "child or children" in this section did not include illegitimates.[2] In so holding, the court relied in part on the fact that the next Code section, OCGA § 51-4-3 (Code Ann. § 105-1306), specifically enables illegitimate children to maintain actions for the wrongful deaths of their mothers. The General Assembly has never responded to *Brinkley* by including illegitimate children in OCGA § 51-4-2 (Code Ann. § 105-1302). In 1979, it did, however, amend OCGA § 19-7-1 (Code Ann. § 74-108), providing parents with a cause of action for the wrongful death of an illegitimate child, by adding subsection (c) (5): "In actions for recovery, the illegitimacy of the child shall be no bar to recovery." Ga. L. 1979, p. 466. Thus, we can discern no legislative action which would change the *Brinkley* interpretation of OCGA § 51-4-2 (Code Ann. § 105-1302) as not including a cause of action for illegitimates upon the wrongful deaths of their fathers. Thus, accepting this as the present state of the Georgia law, we turn to the cases on the issue from the United States Supreme Court in order to assess its constitutionality.

2. The United States Supreme Court has made clear that under the equal protection clause the states may not discriminate on the basis of "immutable human attributes." Parham v. Hughes, 441 U. S.

---

[2] In 1943, the General Assembly passed an act, without amending any other Code sections, providing: "No court, commission, or quasi-judicial body shall discriminate against any person because of his illegitimate birth." Ga. L. 1943, p. 538. Code Ann. § 74-204. (Harrison.) (This section does not appear in the 1982 Official Code of Georgia Annotated). This court in *Brinkley,* supra, 205 Ga. at 417, held the passage of this section was an unconstitutional attempt by the legislature to perform a judicial function, and refused to hold that its passage affected its earlier interpretation excluding illegitimates from the Code section in issue here.

347, 351 (99 SC 1742, 60 LE2d 269) (1979). Among these is illegitimacy. New Jersey Welfare Rights Organization v. Cahill, 411 U. S. 619 (93 SC 1700, 36 LE2d 543) (1973).

In Levy v. Louisiana, 391 U. S. 68 (88 SC 1509, 20 LE2d 436) (1968), five illegitimate children sued for the wrongful death of their mother. The Supreme Court held that a Louisiana court's interpretation of that state's wrongful death and survivorship statute that the word "child" means "legitimate child" constituted invidious discrimination against illegitimate children and that the statute as construed was unconstitutional.

In Weber v. Aetna Casualty &c. Co., 406 U. S. 164 (92 SC 1400, 31 LE2d 768) (1972), the father of four dependent legitimate children and two dependent unacknowledged illegitimate children died as a result of injuries received during the course of his employment. The Supreme Court held that Louisiana's workers' compensation act which treated dependent unacknowledged illegitimate children as "other dependents," rather than as "children," and allowed legitimate children to receive the workers' compensation award to the exclusion of the unacknowledged illegitimate children was a denial of equal protection, saying: "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual — as well as an unjust — way of deterring the parent."[3]

Levy v. Louisiana, supra, involved the wrongful death of a mother, but Weber, supra, involved workers' compensation benefits due upon the death of a father. As noted in the quotation which follows, the Supreme Court no longer limits Levy to "mothers." The Court now reads Levy as applying to "parents."

Texas law allowed legitimate children, but not illegitimates, to claim parental support from their fathers. In Gomez v. Perez, 409 U. S. 535 (93 SC 872, 35 LE2d 56) (1973), the Court held the Texas law

---

[3] The Court has quoted this statement many times in its opinions on illegitimacy. E.g., Pickett v. Brown, —— U. S. —— (103 SC 2199, 76 LE2d 372) (1983); Trimble v. Gordon, 430 U. S. 762, 769-70 (97 SC 1459, 52 LE2d 31) (1977); Mathews v. Lucas, 427 U. S. 495, 505 (96 SC 2755, 49 LE2d 651) (1976); Jimenez v. Weinberger, 417 U. S. 628, 632 (94 SC 2496, 41 LE2d 363) (1974); New Jersey Welfare Rights Organization v. Cahill, 411 U. S. 619, 620 (93 SC 1700, 36 LE2d 543) (1973).

unconstitutional, saying (409 U. S. at 537-538): "We have held that under the Equal Protection Clause of the Fourteenth Amendment a State may not create a right of action in favor of children for the wrongful death of a *parent* and exclude illegitimate children from the benefit of such a right. Levy v. Louisiana, 391 U. S. 68 (1968). Similarly, we have held that illegitimate children may not be excluded from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent. Weber v. Aetna Casualty & Surety Co., 406 U. S. 164 (1972). Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children *to needed support from* their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." (Emphasis supplied.) Deleting the words "to needed support from" in the last sentence quoted and inserting the words "to recover for the wrongful deaths of" in their place would make Gomez directly applicable here.

The Court in Gomez, supra, recognized the problem of proof of paternity of fathers (an argument advanced here), but said (409 U. S. at 538): "We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination."

On the other hand, legislation regarding illegitimates has been upheld where "the statute does not broadly discriminate between legitimates and illegitimates without more, but is *carefully tuned to alternative considerations.*" (Emphasis supplied.) Mathews v. Lucas, 427 U. S. 495, 513 (96 SC 2755, 49 LE2d 651) (1976).

The Georgia statute as interpreted by this court in *Brinkley v. Dixie Constr. Co.,* supra, 205 Ga. 415, is constitutionally flawed because it discriminates purely on the status of illegitimacy and is not "carefully tuned to alternative considerations," as mandated by the Supreme Court. Mathews v. Lucas, supra; Trimble v. Gordon, 430 U. S. 762, 772 (97 SC 1459, 52 LE2d 31) (1977). Under OCGA § 51-4-2 (Code Ann. § 105-1302) all illegitimates, without exception, are denied the right to sue for the wrongful deaths of their fathers no matter what the actual relationships between the children and their fathers.[4] Such a blanket exclusion is not justified by problems of

---

[4] For a discussion of the ways in which a child may be legitimated in Georgia, see *Poulas v. McMahan,* 250 Ga. 354 (2) (297 SE2d 451) (1982). That there exist ways to

proof, Gomez v. Perez, supra, 409 U. S. at 538, particularly where the father of an illegitimate child is permitted to recover for the wrongful death of such child. OCGA § 19-7-1 (Code Ann. § 74-108).

The defendant's reliance on Parham v. Hughes, supra, 441 U. S. 347, is misplaced for that case deals with the rights of the father of an unacknowledged illegitimate to sue for that child's wrongful death. As is clear from that case, different policy considerations are involved and thus the state's interests are also different where the father's rather than the child's rights are at stake. But see OCGA § 19-7-1 (Code Ann. § 74-108), supra.

The trial court correctly held OCGA § 51-4-2 (a) (Code Ann. § 105-1302) as interpreted by this court to be unconstitutional. However, if we were simply to end our consideration of the problem here, it could be argued that legitimate children can no longer recover for the wrongful deaths of their fathers. Such interpretation would create a gap in our wrongful death act which would in turn lead to other equal protection challenges. As heretofore noted, the statute, OCGA § 51-4-2 (a) (Code Ann. § 105-1302), does not discriminate against illegitimate children on its face. It is *Brinkley v. Dixie Constr. Co.*, supra, which renders the statute unconstitutional. We therefore overrule *Brinkley v. Dixie Constr. Co.*, supra, and its predecessors, and, construing OCGA § 51-4-2 (a) (Code Ann. § 105-1302) so as to uphold its constitutionality, hold that henceforth, if there is no widow, OCGA § 51-4-2 (a) (Code Ann. § 105-1302) shall allow recovery for the wrongful death of a father by a child or children, proven to be such, whether legitimate or illegitimate.

3. Defendant's motion to strike is granted.

*Judgment affirmed. All the Justices concur.*

Decided September 21, 1983 —
Rehearing denied October 18, 1983.

*Corish, Beckmann, Smith & Pinson, Luhr G.C. Beckmann, Jr., Andrew J. Hill III,* for appellant

*Feldman, Rand & Ezor, Donald F. Ruzicka, Samuel S. Olens,* for appellee.

---

alleviate the problems of illegitimacy does not save the constitutionality of the statute. Trimble v. Gordon, 430 U. S. at 773-74.