41164. TOLBERT et al. v. MURRELL et al.
(322 SE2d 487)

HILL, Chief Justice.

This case raises three issues: (1) the constitutionality of a part of our wrongful death act; (2) the validity of substituted service of process upon a person in military service on duty outside the state; and (3) the scope of the family purpose doctrine. We will consider the constitutional issue last.

While crossing the street on December 5, 1980, Adolphus Tolbert was struck and killed by an automobile driven by 17-year-old Todd Murrell. The vehicle was registered to and insured by Todd's mother, Ann Murrell. The deceased's widow, Joann Tolbert, received no-fault survivor's benefits from Ann Murrell's insurance carrier. In addition, the widow signed a release of all claims arising from her husband's death for which she received $1,500.

Subsequently, Tammy and Tony Tolbert, children of the deceased by a previous marriage, brought suit for wrongful death against Todd and Ann Murrell, contending that Ann Murrell was liable under the family purpose doctrine. Their stepmother, Joann Tolbert, was joined as an involuntary plaintiff.

The superior court dismissed the action against Todd Murrell finding that Todd had not been properly served. Ann Murrell then moved for summary judgment, pointing out that OCGA § 51-4-2 provides that the cause of action for wrongful death of a husband and father rests in the widow, if there be one, not in the children; i.e., the law does not allow children to sue for the wrongful death of their father if he was survived by his wife. Ms. Murrell also argued that the family purpose doctrine is not applicable here. Plaintiffs urged that OCGA § 51-4-2, supra, denies them the equal protection of law guar-

anteed by our state and federal constitutions. The superior court granted the motion for summary judgment and the plaintiffs appeal.

1. Todd Murrell was dismissed from this action because the trial court found that he had not been properly served. The facts show that at the time of the accident Todd Murrell was a senior in high school living at home with his mother. Thereafter he left school and enlisted in the Navy and was stationed at several places outside Georgia. There is evidence that the son was at home with his mother on a 30-day leave in November 1982, and that it was his practice to return there whenever he was given leave from the Navy. The son was assigned to the USS Ranger out of San Francisco when his mother was served with the complaints against both of them at her home on November 30, 1982.

OCGA § 9-11-4 (d) (7) requires that the complaint and summons be served on "the defendant personally, or *by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein,* or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." (Emphasis supplied.)[1] The emphasized language is known as "substituted" or "notorious" service. Weltner, Process and Service, §§ 7-1, 9-1 (1982). The plaintiffs rely on it to support service, while Todd Murrell argues such service was insufficient because he no longer lived at his mother's home when the suit was served. In his accompanying affidavit, he stated only that he has not resided at his mother's home since enlisting in the Navy in May 1981, that since that time he has resided outside the State of Georgia, and that his mother's home is not his dwelling or usual place of abode. His mother filed a similar affidavit. We view statements as to place of residence as conclusions of fact and law.

The issue then is whether or not service of process upon a serviceman's mother at her home while the son, who formerly lived there, is serving an enlistment in the military outside the state satisfies the statutory requirement of "leaving copies thereof at his dwelling house or usual place of abode."

In 2 Moore's Federal Practice, Par. 4.11 [2] at p. 4-122, we find the following: "Where a party maintains a residence with a member of his family, but travels about or lives at various other places, the permanent residence may, on the facts, be his usual place of abode. This

---

[1] Compare OCGA § 9-10-91, which provides long arm jurisdiction as to nonresidents, including former residents as defined in OCGA § 9-10-90. This provision is not applicable to a Georgia resident temporarily located outside the state. Thus, a person from Georgia serving in the military outside the state could argue that service pursuant to this provision was inappropriate because he or she was a resident of Georgia, not a nonresident or former resident.

leads to a consideration of the situation where the party is in military service. Here a distinction is often made between one temporarily in service, with the intention of returning home after discharge, and one who is a career serviceman, particularly where the serviceman has set up a private home where he 'is stationed. Thus, in the first situation service by leaving process at defendant's family home is valid, although defendant is in military service and is stationed elsewhere, provided his whereabouts are known so that he could reasonably be expected to receive actual notice. In the second situation, service at defendant's former home, or by leaving process with defendant's parents, has been held invalid."

Wright and Miller, 4 Federal Practice and Procedure, § 1096 at p. 366 (1969), states the applicable rule as follows: "The validity of service attempted on a serviceman at his residence immediately before entering the armed forces also has been found to turn on whether he intends to return to the place where service was made or has established a new residence where he is stationed with the military."

The defendant's evidence is silent as to whether he has established a new residence (private home) where he is stationed and is silent as to whether he intends to return to his mother's home upon discharge. The facts necessary to sustain the dismissal have not been adequately presented in this record, and the trial court thus erred in granting Todd Murrell's motion to dismiss for insufficiency of service of process.

2. The plaintiffs enumerate error on the granting of summary judgment to the mother, Ann Murrell. Plaintiffs contend that the car driven by Todd Murrell was a family purpose car. (It is not clear that the trial court based its decision on this ground; we deal with it because it was urged below and on appeal.)

The principles underlying the family purpose car doctrine are set out in *Phillips v. Dixon*, 236 Ga. 271, 272 (223 SE2d 678) (1976), where the rule is stated as follows: "In Georgia, when an automobile is maintained by the owner for the use and convenience of his family, such owner is liable for the negligence of a member of the family having authority to drive the car while it is being used for a family purpose." See OCGA § 51-2-2. The defendant mother claims these principles are not applicable here because she is not the "owner" of the car.

For purposes of the family purpose car doctrine an "owner" has been described as one who owns an auto, controls its use, has some property interest in it, or supplies it. Prosser, The Law of Torts, § 73 (4th ed. 1971); *Murch v. Brown*, 166 Ga. App. 538 (304 SE2d 750) (1983). See also OCGA § 40-1-1 (34).

There is evidence in the record to show that the mother purchased the car with a check drawn on her account and retained title in her name. The car is also insured as belonging to her on a policy

covering two cars. She says, however, that the money to pay for the car in question was deposited to her checking account from her son's savings account as a means of facilitating payment, and that he also reimbursed her for his pro rata share of the insurance premiums. She also says she has never driven or ridden in this car, does not exercise any control over his use of the car, and contributes no money to its upkeep or for gas or oil. She did say, however, that she had deprived her son of the use of a car at least once as an incentive to do better in school.

Under this evidence, if summary judgment was granted on the basis that the car was not being used as a family purpose vehicle, the trial court erred in doing so. *Murch v. Brown*, supra; *Potts v. Seifert*, 133 Ga. App. 675 (212 SE2d 88) (1975); *Watson v. Brown*, 126 Ga. App. 69 (189 SE2d 903) (1972). Compare *Calhoun v. Eaves*, 114 Ga. App. 756 (152 SE2d 805) (1966).

3. The main issue to be determined in this case is the constitutionality of OCGA § 51-4-2 (a). That section, which is applicable to these plaintiffs, provides in pertinent part as follows: "(a) The widow or, if there is no widow, a child or children, either minor or sui juris, may recover for the homicide of the husband or father the full value of the life of the decedent, as shown by the evidence.[2]

"(c) The widow may release the alleged wrongdoer without the concurrence of the child or children or any representative thereof and without any order of court, provided that she shall hold the consideration for such relief [sic] subject to subsection (d) of this Code section.

"(d) The widow shall hold any amount recovered under subsection (a) of this Code section subject to the law of descents, as if it were personal property descending from the decedent to her and to his children."

OCGA § 51-4-3, which is applicable where the mother is killed, provides in pertinent part as follows: "(a) The husband and the legitimate and illegitimate child or children may recover for the homicide of the wife or mother. They shall have the right to recover the full value of the life of the decedent, as shown by the evidence.

"(b) (1) The husband and legitimate and illegitimate child or children who are alive at the time the action is brought shall bring an action jointly and not separately, with the right of survivorship if any of the parties die pending the action.

"(2) If any one or more of the husband and legitimate and illegitimate child or children desire to bring an action under subsection (a)

---

[2] Paragraph (b) provides that the action shall survive the death of the widow or one of the children.

of this Code section, he or they may file the action and cause a copy thereof to be served personally upon the remaining individuals comprising the husband and children or, if one or more of the persons is a minor, then upon the guardian of the minor and a guardian ad litem appointed as provided by law or, if any one or more of the persons is a nonresident, then in the manner provided by law for service on a nonresident. Any of such persons may intervene in the case as an additional plaintiff at any time before final judgment. After final judgment, any of such persons not a party plaintiff shall have no further right of action against the alleged tort-feasor. However, any of such persons not duly served as provided in this paragraph shall have a right against the parties plaintiff for his or their proportionate part of the recovery in the action."

This latter Code section, OCGA § 51-4-3, favors the children of a deceased mother leaving a husband over children of a deceased father leaving a wife as follows:

(a) Under OCGA § 51-4-3 (a) children have an action for the wrongful death of their mother and are parties to the litigation (co-plaintiffs with the widower), whereas under OCGA § 51-4-2 (a) children have no right to institute an action for the wrongful death of their father and are not parties to the widow's suit;

(b) Under OCGA § 51-4-3 children can refuse to settle the claim, whereas under OCGA § 51-4-2 (c) they lack the power to reject settlement (as happened here);

(c) Under OCGA § 51-4-3 children receive their share of the judgment directly, whereas under OCGA § 51-4-2 (d) they must rely on the widow to pay the proceeds over;

(d) Under OCGA § 51-4-3 children share in the recovery on a per capita basis along with the husband, whereas under OCGA § 51-4-2 (d) where there are five or more children (or representatives of deceased children), the wife receives one-fifth of the recovery and the children's shares are reduced. *Vickers v. Vickers*, 210 Ga. 488, 492 (80 SE2d 817) (1954); OCGA § 53-4-2 (2).

The question here, then, is whether OCGA § 51-4-2, supra, denies children who have lost their father by wrongful death equal protection of the law when the deceased is survived by a wife.

The superior court found that the rights of children under § 51-4-2 are protected by OCGA § 51-4-2 (d) which provides that the widow shall hold any amount recovered subject to the law of descents. This subsection, which under certain circumstances results in disparate treatment of children, does not remove all of the disparities between the two Code sections present here. Specifically § 51-4-2 (a) prohibits the children from bringing suit if their father leaves a widow, and § 51-4-2 (c) allows the widow to release the wrongdoer from all claims without the consent of the children. As Tammy and Tony Tolbert

assert, under § 51-4-2 their rights are dependent upon and subservient to their stepmother's right to settle or sue.

In *Ins. Co. of North America v. Russell*, 246 Ga. 269 (271 SE2d 178) (1980), this court considered a related question regarding the rights of widows versus the rights of widowers in receiving workers' compensation benefits. The statute, then Code Ann. § 114-414 (a) (now OCGA § 34-9-13), required a widower, but not a widow, to prove financial dependency on the deceased spouse before collecting workers' compensation benefits due to the death of a spouse. We found that such disparate treatment between widows and widowers violated equal protection. See also Wengler v. Druggists Mutual Ins. Co., 446 U. S. 142 (100 SC 1540, 64 LE2d 107) (1980).

Similarly, in *Edenfield v. Jackson*, 251 Ga. 491 (306 SE2d 911) (1983), we held that illegitimate children as well as legitimate children have the right to sue for the wrongful death of their father under OCGA § 51-4-2, because illegitimate as well as legitimate children may recover for the wrongful death of their mother and because both parents may recover for the wrongful death of an illegitimate child.

In both *Ins. Co. of North America v. Russell*, and *Edenfield v. Jackson*, supra, discriminatory disqualifying conditions upon the right to recover based upon the sex of the deceased were found to be invalid. Here, we have two statutes, OCGA §§ 51-4-2, 51-4-3, which base the right of recovery for the wrongful death of a parent solely on the sex of the parent who has been wrongfully killed. Where the deceased is survived by a spouse, OCGA § 51-4-2 deprives those children whose fathers have been wrongfully killed of rights granted to children whose mothers have been wrongfully killed.

Because the rights of children whose mothers have been wrongfully killed are protected by OCGA § 51-4-3 in ways in which the rights of children whose fathers have been wrongfully killed are not protected, we find that OCGA § 51-4-2 deprives children of deceased fathers who leave widows equal protection of law in violation of Art. I, Sec. I, Par. II of our Constitution. Henceforth, children of deceased fathers who leave widows shall be afforded the rights afforded children under OCGA § 51-4-3.[3] Therefore, Tammy and Tony Tolbert have the right to sue for the wrongful death of their father, and the trial court erred in granting summary judgment to the defendant.

*Judgment reversed. All the Justices concur.*

---

[3] The word "henceforth" is used advisedly. This decision is, of course, to be applied prospectively. The extent, if any, that it must be applied retroactively will have to be determined in another case.

DECIDED OCTOBER 31, 1984 —
REHEARING DENIED NOVEMBER 27, 1984.

*Joe L. Anderson,* for appellants.
*Dennis, Corry, Webb, Carlock & Williams, David F. Root, Hamilton, Waln & Carmichael, Bertram D. Waln,* for appellees.

ON MOTION FOR REHEARING.

On motion for rehearing, the defendants urge the court to declare OCGA § 51-4-2 to be unconstitutional, null and void, and thereby find that the plaintiffs have no cause of action for wrongful death in this case. Were we to do so, children whose fathers have been wrongfully killed would have no cause of action for wrongful death, whereas children whose mothers have been wrongfully killed would have causes of action for wrongful death under OCGA § 51-4-3. For the reasons stated in *Ins. Co. of North America v. Russell,* 246 Ga. 269 (2) (271 SE2d 178) (1980), we overrule defendants' motion and adhere to our holding that "Henceforth, children of deceased fathers who leave widows shall be afforded the rights afforded children under OCGA § 51-4-3."

*Motion for rehearing denied. All the Justices concur, except Smith and Weltner, JJ., not participating.*