## A00A1825. WENTWORTH v. ECKERD CORPORATION et al.
(545 SE2d 647)

ANDREWS, Presiding Judge.

Sheryl Wentworth appeals from the trial court's grant of summary judgment to Eckerd Corporation d/b/a Eckerd Drugs in her slip and fall suit.

In order to prevail, Wentworth must prove that: (1) the store had actual or constructive knowledge of the hazard; and (2) she lacked knowledge of the hazard despite exercising ordinary care. *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (1) (493 SE2d 403) (1997). A defendant may be granted summary judgment in such a case when it meets its burden of showing that the record demonstrates an absence of evidence to support at least one essential element of the plaintiff's case. *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

We apply a de novo standard of review to an appeal from the grant of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in favor of the opponent of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). So viewed, the evidence was that Wentworth went into Eckerd around 6:30 p.m. on October 14, 1995, to buy a spiral notebook. She proceeded to that aisle, obtained her notebook, and walked to the first cash register nearest the photo lab. She noticed an unidentified Eckerd employee at the photo lab. Cashier Linderman, at the first register, directed her to the next register. Wentworth fell between the first and second registers, injuring her knee. Wentworth said she had no warning before the fall but, after the fall, she could tell she had something on her shoe, which she described as "[g]ooey, like soap[,]" a "clearish liquid" on a light floor. Wentworth had no idea how long the substance had been on the floor or how it got there.

Assistant manager Gooch had done a walk-through when the store opened, and part of his job was to walk the aisles during his shift, making sure everything was in place and nothing was on the floor. Gooch was in his office counting cash register drawers when Wentworth fell. Five minutes before her fall, however, he had walked through the "exact area" where she fell, and there was nothing on the

floor. After Wentworth fell, Gooch examined the area and found what he called shampoo on the floor, which "looked like it was tracked up through the store" and was "noticeable" where Wentworth fell.

Prior to Wentworth's fall, Linderman, the cashier, had been checking out customers and straightening shelves behind the registers since the beginning of his shift at 4:30 p.m. He could see the area where she fell and did "not see any spill or foreign substance on the floor where she fell. More specifically, I did not see the gooey substance on the floor before Plaintiff's fall."

While *Robinson v. Kroger Co.*, supra, focused on the second prong of the cause of action, the plaintiff's lack of knowledge, the crux of this case is whether the store had constructive knowledge of the hazard. *Seed v. Smith &c. Mgmt. Corp.*, 242 Ga. App. 395 (530 SE2d 29) (2000). Constructive knowledge may be shown in two ways: (1) by showing that a store employee was in the immediate vicinity and had an opportunity to correct the hazardous condition before the fall, or (2) by showing that the substance had been on the floor for a sufficient length of time for knowledge to be imputed to the proprietor. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980); *Seed*, supra.

Wentworth acknowledged that she had no idea how long the substance had been on the floor and relies on the first method of proof, the presence of an employee, Linderman, in the immediate area. She argues that Gooch's statement that, after she fell and he examined the area, the substance was "noticeable" conflicts with Linderman's statement that he did not see the substance on the floor before the fall. Gooch further testified, however, that the substance "couldn't have been on the floor very long at all, I mean, because I had just come through there." This is consistent both with his statement that he had earlier walked through the area and noticed nothing and with Linderman's statement that he could see the area and did not see any spill or foreign substance.

Wentworth argues that inferences from a number of facts create an issue requiring jury resolution. She deposed that two unidentified women customers came to her aid after she fell. From this fact alone, Wentworth infers that "if no other customers were there [in the store], then the shampoo had to have been on the floor in clear sight of at least three Eckerd employees for some time. Second, if there were two other customers present, one of them could have spilled the shampoo on the floor."

"[A]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. [Cits.]" *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1) (a) (512 SE2d 2) (1999). *Shadburn v. Whitlow*, 243 Ga. App. 555, 557 (533

SE2d 765) (2000); see *Seed,* supra at 396. That is all this argument does.

Initially, we note that only one employee, Linderman, was shown to have been in the area of the cash register and able to see the area *when Wentworth fell.* Gooch was in his office at that time. There is no evidence from which the unnamed employee seen at the photo counter by Wentworth as she approached the registers could have been identified, nor is there evidence the employee, at the time of the fall, could have seen the substance and had time to remove it before the fall. *Barich v. Cracker Barrel &c.,* 244 Ga. App. 550, 551 (1) (536 SE2d 221) (2000); *Pickering Corp. v. Goodwin,* 243 Ga. App. 831, 832 (534 SE2d 518) (2000).

Further, that two other customers could have tracked the substance is of no worth to Wentworth. Missing from her argument is any indication that, assuming such tracking, the substance had been on the floor for a sufficient period of time that someone should have noticed it and cleaned it up. Both *Kroger Co. v. Brooks,* 231 Ga. App. 650 (500 SE2d 391) (1998), and *Watson v. Kroger Co.,* 231 Ga. App. 741 (500 SE2d 631) (1998), relied upon by Wentworth, are distinguishable. In *Brooks,* Kroger put out sample cups of mousse for customers from 5:00 p.m. through the time of Brooks' fall at 11:30 p.m. A trash can was placed near the mousse samples. Brooks fell in closed Checkout Lane 5, within 75 feet of the mousse display. The last verifiable inspection of Checkout Lane 5 had occurred at 8:00 p.m., and the paper cup of mousse upon which Brooks fell had been flattened and smeared over several feet around the flattened cup. This Court concluded that, under these circumstances, there were facts from which the jury could infer that the cup had been there long enough for someone prior to Brooks to slip on it and that the two employees two checkout counters away were in a position to discover the clearly visible hazard. In *Watson,* an identifiable employee stated, after Watson fell on ranch dressing in the produce aisle, that he had been meaning to clean it up and there was a dripping salad dressing jar in the display. This, too, precluded summary judgment.

This case is more similar to *Pickering Corp.,* supra, and *Barich,* supra. In *Pickering Corp.,* Goodwin fell in a puddle of water in the common area of a mall owned by Pickering. James, the manager of a tenant store in the mall, had seen a teenager walk through the mall spilling water in the common area. James immediately called security to advise of the hazard and turned to walk back to the spot. As he did, he saw Goodwin slip and fall. A security guard had walked through the area approximately two minutes before, and there was no water there.

As we pointed out in concluding summary judgment for Picker-

ing was affirmed,

> *Robinson* did not change the historical holding that, absent some reason to be on notice of the likelihood of a given hazard arising, a proprietor is generally permitted a reasonable time after notice of a hazardous condition to exercise care in correcting such condition. [Cits.]

*Pickering Corp.*, supra at 832.

In *Barich*, supra, Barich, her daughter, son-in-law, and granddaughter went to Cracker Barrel to eat dinner. They followed the hostess, Merrill, with the daughter and granddaughter behind Merrill, followed by Barich. As Barich walked toward the table, a waitress crossed in front of her to go to the kitchen with a tray of dirty dishes. After the waitress passed, Barich fell, and butter was found on her shoe and clothing after the fall. According to Barich, this unidentified waitress came running over and said it was her fault, that "something must have fell off my tray." This Court concluded that the unidentified waitress' statement was inadmissible as hearsay and that, even considering that statement, no constructive knowledge had been shown under these facts.

Therefore, as concluded by the trial court, summary judgment was proper for Eckerd Corporation because Wentworth did not produce any evidence to raise a jury question as to whether Linderman could have easily seen the substance.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 16, 2001 —

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Robert J. Hulsey, Clifford E. Alexander*, for appellant.

*Swift, Currie, McGhee & Hiers, John W. Campbell, Kristine J. Moschella*, for appellees.