**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2022**

# In the Court of Appeals of Georgia

A22A1154. LOGAN et al. v. YOUNUSBAIG et al.

GOBEIL, Judge.

This appeal arises from a lawsuit and countersuit filed after a car accident between a vehicle being driven by Jacob Logan ("Logan") and one that was stopped on the highway but otherwise was being driven by Salamullah Baig Mirza ("Sallamulah") that resulted in the death of Salamullah's mother and passenger, Iqbal Banu ("Banu"). Mirza Younusbaig ("Mirza"), individually and as administrator of Banu's estate, sued Logan and his employer, IQVIA, Inc., for negligence. Logan countersued Mirza under the theories of family purpose doctrine and negligent entrustment of the vehicle to Sallamullah. The trial court granted summary judgment to Mirza on both of these issues. Logan and IQVIA have appealed, arguing that the trial court erred in granting summary judgment to Mirza on the issues of (1) negligent

entrustment; and (2) the family purpose doctrine. For the reasons set forth below, we affirm in part (negligent entrustment) and reverse in part (the family purpose doctrine) the ruling of the trial court.

"We apply a de novo standard of review to an appeal from the grant of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in favor of the opponent of summary judgment." *Wentworth v. Eckerd Corp.*, 248 Ga. App. 94, 94 (545 SE2d 647) (2001). So viewed, the record shows that on August 5, 2019, Salamullah was driving a Toyota Camry that was purchased for him by his father, Mirza. Salamullah was driving his mother, Banu, home from a family gathering. The accident occurred on Georgia 400 Southbound at approximately 1:10 a.m. Salamullah stopped his car in the left lane of the highway. He later told police that his rear bumper was coming off and he needed to stop the car to address the situation. As the car was pulled over, it was partially blocking the left lane of the highway.

Logan was driving in the left lane of the highway, using his cruise control. He crashed into Salamullah's vehicle within that lane. Banu was still in the vehicle at the time of the crash, suffered fatal injuries, and was declared dead at the scene. Logan

complained of injuries and was transported to a hospital. Salamullah was charged criminally in connection with the accident.

Mirza, as Banu's surviving spouse and administrator of her estate, sued Logan and IQVIA, alleging that Logan was negligent in the operation of his vehicle and was acting within the scope of his employment with IQVIA at the time of the crash. The parties engaged in discovery, and Logan raised counterclaims against Salamullah, as the negligent driver, and Mirza, as a person who exerted control over the vehicle through his relationship with Salamullah.

Mirza moved for summary judgment on Logan's claims of negligent entrustment and family purpose doctrine. Logan filed a cross-motion for summary judgment on the family purpose doctrine, but argued that the evidence at least raised questions of fact for a jury on the negligent entrustment claim. The trial court granted summary judgment to Mirza, finding first that Logan had not established the elements of a negligent entrustment claim because (1) the evidence showed that Mirza did not own the vehicle at the time of the accident, and (2) there was no evidence that Salamullah had a pattern of reckless driving and Mirza was not aware and could not have been aware of a pattern of reckless driving. As to the family purpose doctrine,

3

the trial court found that the evidence did not demonstrate that Mirza had authority and control over the vehicle owned and driven by Salamullah. This appeal followed.

1. Taking Logan's claims out of order, he asserts that the trial court erred in granting summary judgment on the issue of Mirza's negligent entrustment of the vehicle to Salamullah. We disagree.

"In a negligent entrustment claim, liability arises from the negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless." *McManus v. Taylor*, 326 Ga. App. 477, 480 (1) (756 SE2d 709) (2014) (citation omitted).

Pretermitting Logan's first argument about whether the trial court erred in stating that Mirza's ownership of the Camry was a prerequisite to a negligent entrustment claim, we affirm the trial court's summary judgment in part because we conclude that Logan's evidence did not raise a triable issue of fact concerning Mirza's knowledge of any incompetence or recklessness in Salamullah's use of the vehicle. See *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) (we may affirm the grant of summary judgment if it is "right for any reason").

In order to defend Mirza's motion for summary judgment on the negligent entrustment theory of liability, Logan was required "to show that [Mirza] had actual

4

knowledge of a pattern of reckless driving or facts from which such knowledge could be reasonably inferred in order to preserve the issue for jury determination." *Worthen v. Whitehead*, 196 Ga. App. 678, 678 (396 SE2d 595) (1990) (citation and punctuation omitted).

As to actual knowledge, Mirza testified that he believed that Salamullah had never been involved in a car accident nor had any moving violations, either in India where Salamullah learned to drive, or since the family's move to Georgia. Mirza had been a passenger in the car with Salamullah many times, and believed that Salamullah was a safe driver. If Mirza believed that Salamullah was unsafe, he would not have allowed him to drive. Additionally, Salamullah's driving history is in the record and shows that Salamullah had never been in an accident or received a citation.

Logan argues that Salamullah's invoking the Fifth Amendment in response to questions about his driving history in his first deposition (when he was still facing criminal charges in connection with the accident) creates implied admissions that he had a negative driving history. However, Logan does not provide authority suggesting that an implied admission by Salamullah can be imputed onto the actual or inferred knowledge of Mirza. Instead, Logan relies upon *Perez v. Atlanta Check Cashers, Inc.*, which states

5

in a civil case, if a witness invokes the privilege against self-incrimination and refuses to answer a question concerning whether he or she committed a particular act, it creates an implied admission that a truthful answer would tend to prove that *the witness* had committed the act.

302 Ga. App. 864, 870 (692 SE2d 670) (2010) (citation and punctuation omitted; emphasis supplied). Thus, although Salamullah's refusal to state whether he had to take portions of the driving test multiple times or had any prior accidents or moving violations may be considered admissions that Salamullah had a poor driving history, nothing in those admissions shows that Mirza had actual knowledge of any negative driving history. See *May v. Phillips*, 157 Ga. App. 630, 631 (2) (278 SE2d 172) (1981) (even if plaintiff shows that driver was in fact an incompetent and reckless driver, he must also make a showing that the defendant had actual knowledge that driver was a reckless and incompetent driver). And even Salamullah's invocation of the privilege in response to questions regarding his father's knowledge of his driving history still does not impute such knowledge to Mirza. *Perez*, 302 Ga. App. at 870. Mirza did not refuse to answer the question as to his knowledge of Salamullah's driving history, and he answered definitively that he knew and believed that Salamullah was a safe driver with no negative history.

6

Thus, given the lack of evidence that Mirza had actual knowledge that Salamullah was a reckless driver, and given the direct evidence to the contrary, we conclude that the trial court correctly granted summary judgment to Mirza on any claim grounded in negligent entrustment, and affirm the trial court's order in part.

2. Logan next argues that the trial court erred in granting summary judgment on his claim that Mirza is vicariously liable for Salamullah's use of the Camry under the family purpose doctrine. We agree.

"The family purpose doctrine states that when an automobile is maintained by the owner for the use and convenience of his family, such owner is liable for the negligence of a member of the family having authority to drive the car while it is being used for a family purpose." *Bailey v. Butler*, 199 Ga. App. 753, 754 (406 SE2d 97) (1991) (citation and punctuation omitted).

> To apply the family purpose doctrine to a given situation, four criteria must be met: (1) the owner[1] of the vehicle must have given permission to a family member to drive the vehicle; (2) the vehicle's owner must have relinquished control of the vehicle to the family member; (3) the

---

[1] Although the word "owner" is used here, the Supreme Court has clarified that "owner" in this context means "one who owns an auto, controls its use, has some property interest in it, or supplies it." *Tolbert v. Murrell*, 253 Ga. 566, 568 (2) (322 SE2d 487) (1984). So the Camry being registered in Salamullah's name is not fatal to Logan's claim.

7

family member must be in the vehicle; and (4) the vehicle must be engaged in a family purpose.

Id. (citation and punctuation omitted). "These factors are not determinative of vicarious liability but are necessary preconditions. Georgia courts have used authority and control as the principal factor in determining whether liability accrues under the doctrine." *Jackson v. Reed*, 229 Ga. App. 433, 434-435 (494 SE2d 52) (1997) (citation and punctuation omitted). Thus, the key question is whether Mirza "had the right to exercise such authority and control that it may be concluded that an agency relationship existed between him and [Salamallah] with respect to the use of the vehicle." *Bailey*, 199 Ga. App. at 754 (citation and punctuation omitted).

Here, evidence in the record shows that Mirza purchased the Camry for Salamullah, paid for its insurance and maintenance, and routinely supplied gas money for its use. Salamullah lived at home with his parents and other family members, and Mirza described that his son would request permission when he was going out and would inform his parents of his comings and goings. Salamullah did not specifically pay rent or expenses, but gave his father the money he earned at his job.

As for the use of the car, Mirza never drove the Camry, but rode with Salamullah in the car many times. Mirza stated that he believed Salamullah was a safe

8

driver and that if Mirza believed that Salamullah was unsafe, he would not have allowed him to drive. Banu did not drive, so Salamullah often would drive her for errands. On the night of the accident, Salamullah was driving his mother home from a family gathering because his father, who drove Banu to the gathering, had to leave for work.

This evidence, when construed in Logan's favor, raises questions of fact concerning whether Mirza is liable for his son's negligence in operating the Camry on the night of the accident. Unlike the facts presented in *Bailey*, supra, where "the undisputed evidence established that [the parent] did not have the requisite authority and control over [child's] use of the vehicle," Mirza here described a family dynamic in which Mirza had the authority to control Salamullah's use of the vehicle; for example, to drive his mother for errands, to grant or deny permission to go out, or to remove his access to the vehicle if necessary for his safety.

Further, testimony that Salamullah provided his earnings to his father and generally submitted to his father's authority shows that Mirza potentially exerted the type of control over Salamullah that would make him liable for Salamullah's actions.[2]

_____

[2] We acknowledge that, after his deposition, Mirza prepared an affidavit stating that he exerted no control over Salamullah's use of the Camry. However, as argued by Logan, "[t]he *Prophecy* rule requires trial courts, when considering summary

9

Although Salamullah provided deposition testimony to the contrary about Mirza's control and authority over his use of the car, such contradiction supports our conclusion that there remains a question of material fact that is for a jury to consider.

We agree with Logan that *Murch v. Brown*, 166 Ga. App. 538 (304 SE2d 750) (1983), is controlling in the instant case, as the facts are analogous. In *Murch*, the defendant father co-signed the financing for the purchase of an automobile with his daughter, although the daughter stated that she provided the funds for the purchase and paid for its upkeep. Id. at 540. Similarly, here, Mirza described that he purchased the vehicle for Salamullah and paid for its expenses, but Salamullah regularly provided his father the money he earned at his job. The daughter in *Murch* was living at home, working full time, and "subject to her parents' general supervision." Id. at 539-540. This living situation is similar to the one described by Mirza. In *Murch*, the daughter was the only person to drive the vehicle, and was en route to give her

judgment motions, to (1) eliminate all portions of a party's self-contradictory testimony that are favorable to, and left unexplained by, that party; and (2) consider the remaining evidence in favor of the party opposing summary judgment." *Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000) (citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (343 SE2d 680) (1986)). Thus, Mirza's affidavit cannot serve as the basis for summary judgment in his favor, as it directly contradicts other testimony he provided that his son was under his authority and control and that he had the authority to take the car away if he believed Salamullah was an unsafe driver.

brother a ride home at the time of the accident. Id. Here, Salamullah was the only person to drive the vehicle, and he was driving his mother home at the time of the accident. In *Murch*, both the father and the daughter averred that the father exercised no authority or control over the vehicle. Id. at 540. And here, Mirza averred and Salamullah testified that Mirza did not control Salamullah's use of the vehicle.

In *Murch*, we affirmed the trial court's denial of summary judgment as to whether the father was liable under the family purpose doctrine, concluding that the evidence as stated created a genuine issue of fact as to whether the father was liable. Id. We find that the same conclusion is required here, because the evidence creates a question of fact as to Mirza's control and authority over Salamullah's use of the vehicle. See also *Clifton v. Zemurray*, 223 Ga. App. 756, 757-759 (478 SE2d 897) (1996) (reversing summary judgment on family purpose doctrine claim where son was gifted a vehicle by his grandparents but lived with his parents, who paid for its registration and some of its upkeep; son testified that his step-father could take away his access to the vehicle if the step-father believed his son was an unsafe driver).

Mirza relies on *Yim v. Carr*, 349 Ga. App. 892, 896-897 (1) (a) (827 SE2d 685) (2019), where we found that the parents were not liable under the family purpose doctrine as a matter of law. However, our conclusion in that case was based on

11

affirmative evidence that the parents "considered the car to belong to [the child] and did not feel that they could deprive her of its use." Id. at 896 (1) (a). And, although the plaintiff argued in *Yim* that the child was subject to the parents' general authority because she lived at home, the plaintiff failed to support that argument with record evidence. Id. In contrast to *Yim*, the instant case includes evidence that Mirza believed he had the authority to take away Salamullah's access to the vehicle, and control in some way its use. See id. (noting that *Yim* was distinguishable from other cases "where there was some evidence that the parent had authority to restrict, or did in fact restrict, the child's use of the vehicle for violating household rules").

Thus, because it is not disputed that Mirza provided a vehicle for Salamullah, a member of his immediate family, who was using it for a family purpose at the time of the accident, and because a jury could infer that Mirza had control and authority over Salamullah and his use of the vehicle, we reverse the trial court's order in part as to its grant of summary judgment on this issue.

*Judgment affirmed in part and reversed in part. Land, J., concurs. McFadden, P. J., concurs fully in part and specially in part.*

# In the Court of Appeals of Georgia

A22A1154. LOGAN et al. v. YOUNUSBAIG et al.

McFADDEN, Presiding Judge, concurring fully in part and specially in part.

I concur fully in the judgment and in all of the majority opinion except note 2, which addresses the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986).

I agree that there is sufficient evidence to authorize a jury to find applicable the family purpose doctrine. As the majority explains, the evidence of Mirza's authority and control over his 22-year-old son Salamullah's person was sufficient to satisfy the family purpose doctrine. This is so whether or not the *Prophecy* rule applies to exclude Mirza's affidavit testimony because, even if considered, that testimony must

be construed alongside all other evidence in the light most favorable to the nonmovants.

But I am not persuaded that the affidavit testimony must be excluded under the *Prophecy* rule. The affidavit testimony shows that both men viewed the vehicle as belonging to Salamullah. It does not necessarily contradict Mirza's testimony establishing his general authority and control over Salamullah, which is dispositive of the issue before us. See *T & T Transp. v. Duckworth*, 361 Ga. App. 882, 884 (864 SE2d 181) (2021) ("For purposes of the *Prophecy* rule, testimony is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony.") (citation and punctuation omitted).

Moreover, the reason for the *Prophecy* rule is not implicated in this case. "[T]he *Prophecy* rule is aimed at discouraging a party's temptation to commit perjury during a civil trial's summary judgment phase[.]" *Thompson v. Ezor*, 272 Ga. 849, 852 (2) (536 SE2d 749) (2000). I see no evidence here of such dishonesty or abuse.